Felix TORRES, Plaintiff, Appellee,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellant.

No. 81–1606.

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1982.

Decided May 3, 1982.

Anne Buxton Sobol, Atty., Civ. Div., Dept. of Justice, Washington, D. C., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., J. Paul McGrath, Asst. Atty. Gen., Robert S. Greenspan, Atty., Civ. Div., Dept. of Justice, Randolph W. Gaines, Chief of Litigation, and Andrew E. Wakshul, Atty., Dept. of Health and Human Services, Washington, D. C., were on brief, for defendant, appellant.

Porfirio Martinez Laboy, Ponce, P. R., with whom Jose R. Mendez Purcell, Ponce, P. R., and Manuel Medina Jaca, Rio Piedros, P. R., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, GIBSON,* Senior Circuit Judge, BOWNES, Circuit Judge.

COFFIN, Chief Judge.

In this appeal, we are asked to decide whether the Secretary of Health and Human Services must always identify specific jobs that an applicant for disability benefits may perform, or whether he may use the so-called "grid" regulations found in 20 C.F.R., Part 404, Subpart P, Appendix 2 (Medical-Vocational Guidelines) (1981)[1] to disqualify categories of applicants who have certain relevant characteristics.

The plaintiff-appellee is a 53-year-old male with a third-grade education. He has worked as a sugar cane cutter, farm hand,

---

* Of the Eighth Circuit, sitting by designation.

1. The regulations in effect at the time of the administrative decision in this case have since been modified. 45 Fed.Reg. 55566 (1980). Since the modifications do not alter the substance of the regulations, we cite to the current version.

and cement truck loader since he was eight years old. He applied for disability benefits on April 24, 1979, alleging disability due to poor vision. After a hearing, the Administrative Law Judge (ALJ) found him to be not disabled, and that finding was approved by the Appeals Council on May 22, 1980. The appellee sought judicial review in the district court, pursuant to 42 U.S.C. § 405(g).

By opinion and order, the district court remanded the case to the Secretary for further proceedings. The court held that "a general statement that a claimant may engage in ('medium') work without testimony by a vocational expert who can identify specific jobs, absent other reliable evidence of the claimant's ability to engage in other occupations, does not satisfy the substantial evidence test". The court certified its remand order under 28 U.S.C. § 1292(b). Because of the importance of the issue, we now exercise our discretion under § 1292(b) to take jurisdiction of the appeal. For reasons that will appear, we vacate the judgment and remand the case for further proceedings.

Since the district court was able to draw a general legal conclusion without reviewing the administrative record in close detail, the facts to be considered on appeal are quite limited. We will consider the claimant to be as the ALJ described him, without passing on the question of whether those findings had substantial support in the record. Naturally, those findings will be open to judicial scrutiny during future proceedings.

The ALJ found that the claimant has had normal vision ever since a successful cataract operation on August 1, 1978. He did not believe that any of the other non-exertional impairments alleged by the claimant were in fact substantial enough to limit his ability to work. Moreover, the ALJ found that the claimant has the exertional capacity for "medium work" under 20 C.F.R. § 404.1567(c); he is "closely approaching advanced age" under 20 C.F.R. § 404.-

1563(c); he has a "marginal education" under 20 C.F.R. § 404.1564(b)(2); and he is suited only for "unskilled work" under 20 C.F.R. § 404.1568(a).

The ALJ concluded from these facts that the claimant had successfully shown that he could not perform any of his relevant prior jobs. Thus, the burden shifted to the Secretary of showing that the claimant could nonetheless perform other jobs available in the national economy. *Hernandez v. Weinberger*, 493 F.2d 1120, 1122–23 (1st Cir. 1974). However, since the claimant had no non-exertional impairments, the ALJ concluded that no direct evidence of such jobs was needed from the Secretary. Rather, the ALJ applied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 3, where the Secretary had taken administrative notice of the existence of many jobs in the national economy that may be performed by persons under age 55 who have the exertional capacity for "medium work" and who have no non-exertional impairments.[2] Since, in the ALJ's opinion, the claimant's medical and vocational attributes were precisely described by Rule 203.18 of the Table, he ruled that the claimant was not disabled.

We think it clear that the ALJ properly understood the Medical-Vocational Guidelines as being *designed* to have conclusive force in certain situations. *See* 20 C.F.R. § 404.1569; 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(a), (b). In addition, we observe that the regulations do not name the particular jobs that the Secretary concluded were available to certain categories of individuals; instead, they give approximate numbers of available occupations. *See, e.g.,* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 203.00(a) (2,500 occupations involve the functional capacity for "medium work"). Taken together, these facts suggest that the Secretary intended the regulations to eliminate the need to identify specific jobs in those cases where the grid "directs" a conclusion of "not disabled". Therefore, when the district court

---

**2.** The Table reports that such jobs do not necessarily exist for a person of comparable strength over age 55. *See* Rules 203.01, 203.02, 203.10.

in this case held that an ALJ must always identify specific jobs within a claimant's capacity, it implicitly invalidated the regulations to that extent.

In *Geoffroy v. Secretary of HHS*, 663 F.2d 315 (1st Cir. 1981), we gave qualified approval to the regulations as a valid exercise of the Secretary's statutory authority. *See* 42 U.S.C. § 405(a). In that case, however, we did not have to reach the precise issue posed here: whether an ALJ must list specific jobs that could be performed by a claimant whose relevant attributes are precisely described by a rule in the "grid" and who suffers only from an exertional impairment. *See Geoffroy, supra*, 663 F.2d at 319. Yet, in two more recent cases, we have hinted that no such wide-ranging requirement exists. *See Gagnon v. Secretary of HHS*, 666 F.2d 662 at 665 n.6, 666 n.9 (1st Cir., 1981); *Torres v. Secretary of HHS*, 668 F.2d 67 at 69 (1st Cir., 1981).

We now make the point explicit. Where the Medical-Vocational Guidelines purport to require a finding of "not disabled", the ALJ need not name specific jobs that the claimant could perform. The reasons for this holding parallel our reasons for upholding the regulations in *Geoffroy.* The regulations brought the Secretary's broad knowledge of the labor market to bear on a series of abstract questions concerning whether substantial gainful work exists in the national economy for a person with a given exertional capacity, background, age, and education. The rulemaking process served to make application of the statutory definition of disability more uniform and more fair, by eliminating the need to rely upon an individual vocational expert's knowledge in many relatively uncomplicated situations. If we were to require an ALJ to name particular jobs in such cases, we would force him to rely upon a vocational expert's testimony in precisely those cases where we have already deemed the Guidelines' analysis more reliable.

We recognize that our holding here is contrary to that of the Second Circuit. *Decker v. Harris*, 647 F.2d 291 (2d Cir. 1981); *Campbell v. Secretary of HHS*, 665 F.2d 48 (2d Cir., 1981). That court expressed concern that "the claimant be given adequate notice of the nature and demands of the types of jobs allegedly available." *Campbell, supra*, at 53. While we appreciate the court's concern, we believe it emphasizes the value of "notice" in an inappropriate context.

The Second Circuit raised the procedural issue of fair notice because in each case the ALJ 'adjudicates a "factual" question: whether a particular claimant can perform jobs that exist in the national economy. But, as the Medical-Vocational Guidelines demonstrate, answering this single complex question requires one to determine two very different sorts of subsidiary "facts". Each case requires both a broad assessment of the conditions existing in the national economy and a narrow assessment of the capacities of the particular claimant. As we have held above, the broad assessment of the national economy is more accurately and fairly performed at the national administrative level than by vocational experts in each case. It is an assessment of "legislative fact", and there is thus no need to conduct an evidentiary hearing at which an individual claimant can challenge the agency's findings. *WBEN, Inc. v. United States*, 396 F.2d 601, 618 (2d Cir. 1968) (Friendly, J.); K. Davis, Administrative Law Treatise § 12:3 (2d ed. 1979). *A fortiori*, "notice" is not a concern in such cases.[3] Although not phrased in these terms, such has been the conclusion of three other Circuits who have addressed this issue. *Cummins v. Schweiker*, 670 F.2d 81 at 83 (7th Cir. 1982); *Kirk v. Secretary of HHS*, 667 F.2d 524 at 530–32 (6th Cir. 1981); *Frady v. Harris*, 646 F.2d 143 (4th Cir. 1981).

As we have emphasized in the past, the mere fact that the Guidelines are conclusive on these issues of legislative fact does not

---

**3.** Of course, in many cases the Regulations do not provide an answer, and therefore the broad factual issue must be resolved case by case, with the assistance of a vocational expert. In such cases, the factual issue is usually not resolved into its broad and narrow components, and the overall question might well be deemed "adjudicative".

relieve the Secretary of his duty to conduct an inquiry into the many issues of adjudicative fact raised by each claimant's application for benefits. The ALJ must analyze each claimant's exertional capacity, age, work experience, and education. He must determine whether the claimant suffers from non-exertional impairments. Whether or not the Guidelines direct a conclusion in a particular case, each subsidiary finding is subject to judicial review. And where an individual's specific profile is not found in Appendix 2, the ALJ must gather sufficient information to draw an appropriate conclusion. *See* Rules 200.00(d), (e). Typically, the testimony of a vocational expert will be required, as it was before the regulations took effect. *Gagnon, supra,* at 666 n.9.

On remand, the district court must ensure that the regulations were properly applied in this particular case. It must review the record to see if substantial evidence supports each of the conclusions that led the ALJ to decide that Rule 203.18 was applicable. In particular, it must find substantial evidence to support the conclusion that the appellee's cataract operation was so successful as to leave him with no significant non-exertional impairments.

*Vacated and remanded for further proceedings.*