**Polly BULPETT, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 84–2551–Y.

United States District Court, D. Massachusetts.

Sept. 17, 1985.

Linda L. Landry, Neighborhood Legal Services, Inc., Lynn, Mass., for plaintiff.

Jeffrey Martin, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff Polly Bulpett ("Bulpett") brought this action to obtain judicial review of a final decision of the Secretary of Health and Human Services ("the Secretary") denying Bulpett's application for Social Security disability benefits. The Secretary found that Bulpett suffered from physical impairments associated with gastrointestinal problems, arthritis, and hypertension, but that these impairments were not disabling. Bulpett argues that this determination is not supported by substantial evidence and is based on several erroneous conclusions of law.

### I.

Bulpett is a 51 year old woman, with a high school education, who has worked as a payroll clerk, waitress, and dental assistant. In 1966, Bulpett developed severe gastrointestinal problems and stopped working. She initially applied for disability benefits on December 22, 1969, alleging disability due to ulcerative colitis (Tr. 96), and was awarded benefits for a period beginning in November 1966. According to the disability determination by the Department of Health, Education and Welfare, medical evidence showed that Bulpett suffered a combination of impairments including "inflammatory disease of terminal ileum and possibly colon, probable regional ileitis plus erythema nodosum." Clinical findings included "spiking fevers, bloody stools, cramps, and recurring, severe fatigue" and x-rays were "consistent with regional enteritis." (Tr. 28)

Bulpett continued to receive disability benefits from November 1966 until March 1981, when it was determined upon review of the medical evidence that her disability had ceased in January 1981. That decision was upheld by an Administrative Law Judge on September 30, 1981, and later affirmed by the Appeals Council.

On May 17, 1983, Bulpett reapplied for disability benefits, alleging disability due to gastrointestinal disorders, gallstones, hypertension, back problems, and a low potassium level. (Tr. 146–49) Her application was denied initially and again upon reconsideration. Bulpett requested a hearing on her claim, and one was held before an Administrative Law Judge on January 20, 1984. The Administrative Law Judge found that Bulpett was not disabled and denied her application on January 31, 1984. On June 20, 1984, the Appeals Council de-

nied Bulpett's request to reopen the case, and thus the decision of the Administrative Law Judge became the final decision of the Secretary.

## II.

A district court reviewing a decision of the Secretary must determine whether the decision is supported by substantial evidence and conforms to statutory requirements. *Geoffroy v. Secretary of HHS*, 663 F.2d 315, 319 (1st Cir.1981). The relevant statute defines a disabled individual as one who is unable:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

42 U.S.C. § 423(d)(1)(A) (1982). Section 423 (d)(2)(A) further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

*Id.* § 423(d)(2)(A).

The Secretary has promulgated regulations that employ a series of tests to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 (1985). *See Goodermote v. Secretary of HHS*, 690 F.2d 5, 6 (1st Cir.1982). In particular, the Social Security Administration asks five questions in the following order:

> First, is the claimant currently employed? If so, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment which "significantly limits his or her physical or mental capacity to perform basic work-related functions." 20 C.F.R. § 404.1521 (1985). If the claim-

ant does not have a severe impairment, the claimant is automatically considered not disabled.

> Third, does the claimant have an impairment equivalent to one specifically listed in the regulations' Appendix 1? If so, the claimant is automatically considered disabled.

These first three tests are threshold "medical" tests. If the claimant is found to have a severe impairment (test 2) but that impairment is not equivalent to one listed in Appendix 1 (test 3), the agency goes on to the fourth and fifth questions, which apply "vocational" tests:

> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled. *Goodermote v. Secretary of HHS*, 690 F.2d at 6–7.

In applying these last two "vocational" tests, the claimant has the burden of proving that he is disabled under the fourth test; that is, he must prove that his disability is serious enough to prevent him from working at his former jobs. However, the Secretary bears the burden of showing that the claimant has not satisfied the fifth test; that is, the Secretary must show the existence of other jobs in the national economy that the claimant can perform. *Id.* at 7.

## III.

In this appeal, Bulpett argues that the Administrative Law Judge "concluded that [Bulpett] did not have a severe impairment," thereby suggesting that the Court's inquiry should focus on the second test stated above—that is, does the claimant have a "severe impairment?" Although the decision of the Administrative Law Judge is not a model of clarity, a close examination of the decision indicates that,

in fact, the Administrative Law Judge went beyond the three threshold tests, having found that "the claimant's impairments are severe [but] do not meet or equal the criteria of the Listings found in Appendix 1." (Tr. 70) The Administrative Law Judge thus moved on to the "vocational" tests. Although the Administrative Law Judge made no specific finding under the fourth test, he concluded, presumably under the fifth test, that Bulpett retained the functional capacity to perform a light level of work and could perform a variety of jobs found in the economy.

The Secretary has promulgated a set of medical-vocational guidelines known as "the Grid" to simplify the application of the fifth test. 20 C.F.R. Part 404, Subpart P, Appendix 2 (1985). The Grid has been upheld as a legitimate exercise of the general rulemaking authority granted to the Secretary. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Torres v. Secretary of HHS*, 677 F.2d 167, 169 (1st Cir.1982). The Grid is basically a matrix, including different combinations of the four essential factors set out in the statute (physical ability, age, education, and work experience) and stating, as to each combination, whether a claimant with those characteristics is "disabled" or "not disabled." It consists of three separate tables, one for those who retain the residual exertional capacity to perform "sedentary" work, one for those with the residual capacity to perform "light" work, and one for those with the residual capacity to perform "medium" work. The Administrative Law Judge simply selects the proper table and row based on the characteristics he finds the claimant to possess and reads the conclusion—"disabled" or "not disabled"—from the last column on the table. *Sherwin v. Secretary of HHS*, 685 F.2d 1, 2 (1st Cir.1982).

When application of the Grid directs a finding that an individual claimant is "not disabled," the Administrative Law Judge is not required to name specific jobs that the claimant could perform. The Grid is designed to "make application of the statutory definition of disability more uniform and more fair, by eliminating the need to rely upon an individual vocational expert's knowledge in many relatively uncomplicated situations." *Torres v. Secretary of HHS*, 677 F.2d at 169. If the facts of a particular case do not fit squarely within one of the rules included in the Grid because they reveal a borderline case or a case lying between the two rules, those rules still "provide guidance;" they are to be given "consideration," and they "provide an overall structure for evaluation." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(d). If instead the facts do not fit squarely within a rule because the claimant has a combination of impairments—particularly if the claimant has a nonexertional impairment—the rules require still more individualized consideration. *Id.* at § 200.-00(e); *Sherwin v. Secretary of HHS*, 685 F.2d at 3.

■ Whether or not the Grid directs a conclusion in a particular case, the Administrative Law Judge nevertheless must analyze each claimant's physical ability, age, education, and work experience, and must also determine whether the claimant suffers from nonexertional impairments. Each of these findings is subject to judicial review. *Torres v. Secretary of HHS*, 677 F.2d at 170.

■ Judicial review of Social Security disability determinations is limited, and the Court must affirm the Secretary's decision if it is supported by substantial evidence. The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the Secretary. Therefore, this Court must uphold the Secretary's findings in this case if a reasonable mind, reviewing the entire record as a whole, could accept it as adequate to support the Secretary's conclusions. *Rodriguez v. Secretary of HHS*, 647 F.2d 218, 222 (1st Cir.1981).

## IV.

In this case, the Administrative Law Judge relied primarily on the Grid in reaching his conclusion that Bulpett was not

disabled. He also entertained brief testimony from a vocational expert. For purposes of applying the Grid, the Administrative Law Judge placed Bulpett in the following categories: (1) capable of performing light work; (2) closely approaching advanced age; (3) high school education; and (4) unskilled work background. (Tr. 69) The Administrative Law Judge then applied Rule 202.13, which directs a conclusion of "not disabled" for a person with those four characteristics.

It is undisputed that the Administrative Law Judge properly characterized Bulpett's age, education, and work experience. However, Bulpett argues that the Administrative Law Judge improperly concluded that she was capable of performing "a light level of work." Placing Bulpett in the "light work" category is particularly important for purposes of using the Grid—for example, if the Administrative Law Judge had concluded instead that Bulpett was capable of performing only "sedentary" work, the Grid would have directed a finding of "disabled." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.12. Bulpett also argues that the Administrative Law Judge failed to consider the cumulative effect of her various impairments. As noted above, if a claimant has a combination of impairments or a nonexertional impairment, an Administrative Law Judge must perform a more individualized analysis than simply a mechanical application of the Grid. *Sherwin v. Secretary of HHS,* 685 F.2d at 3.

The initial question is thus whether there is substantial evidence to support the conclusion of the Administrative Law Judge that Bulpett retains the functional capacity to perform a "light" level of work. "Light work" is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

The Administrative Law Judge made no specific findings regarding Bulpett's ability or inability to perform according to this definition. He reached several conclusions about her medical conditions and commented briefly on some of her daily activities, but made no effort to apply those conclusions to an assessment of her capacity to perform work.

Bulpett presented competent medical evidence that she suffers from gastrointestinal problems, arthritis, and hypertension. The Administrative Law Judge agreed that she suffered from all three impairments, but concluded that they were not severe enough to render Bulpett disabled. The Administrative Law Judge relied on three medical sources to reach this conclusion: a report from an unidentified medical examiner (Tr. 179); a report from Dr. John Eliapoulas (Tr. 180); and a report from consulting physician Dr. Gerald Aronson (Tr. 182–84).

Bulpett argues that the Administrative Law Judge mischaracterized certain key portions of the medical evidence. This Court agrees. A close review of the medical reports shows that the Administrative Law Judge selectively summarized them in a way that supported his conclusion of "no severe pathology." *See Anderson v. Secretary of HHS,* No. 80–2159–T, slip op. at 16 (D.Mass. Jan. 16, 1984) ("It is not reasonable to rely arbitrarily on portions of a medical report while simultaneously ignoring the spirt of the report.") For example, in summarizing the unidentified examiner's report, the Administrative Law Judge omitted several key entries: the diagnosis is one of degenerative osteoarthritis, the disease is "still active in spite of therapy," and the plaintiff's therapy includes gentle stretching exercises and external immobili-

zation of lower lumber spine by means of a back brace. (Tr. 179)

With respect to the report of Dr. Eliapoulas, the Administrative Law Judge stated simply: "In September 1979 the claimant underwent an exploratory laparotomy. Dr. John Eliapoulas in his report of May 26, 1983 stated that the claimant had not been seen for his [sic] regional enteritis problem for over four years." (Tr. 68) In fact, Dr. Eliapoulas' report is much more illuminating—it describes the surgery performed (including a "resection of terminal ileum" and "partial right colectomy") and indicates that Dr. Eliapoulas last examined the plaintiff in December of 1981. (Tr. 180) The fact that Dr. Eliapoulas himself has not seen Bulpett in several years does not indicate, as the Administrative Law Judge suggests, that Bulpett has recovered from her regional enteritis; other physicians have commented on her "Crohn's disease" since Dr. Eliapoulas' last examination. (Tr. 179, 191)

The summary of Dr. Aronson's report by the Administrative Law Judge is even more troublesome. For example, with respect to Bulpett's osteoarthritis and hypertension, the Administrative Law Judge states: "Despite her apparent osteoarthritis of the lumbosacral spine, [Dr. Aronson] found no evidence of nerve or disc disease. Her hypertension disclosed no end organ damange [sic] or severe symptomatology." (Tr. 68) In fact, Dr. Aronson's report states the following:

> She has significant osteoarthritis involving the lumbosacral spine and apparently this is symptomatically important. There is no evidence of nerve root or disc disease, however. She also has hypertension which at the time of this one examination did not appear to be well controlled.

(Tr. 183–84)

As for Bulpett's gastrointestinal problems, Dr. Aronson concluded, "At the present time I would assume for the most part her small bowel problem appears to be alleviated or at least controlled without any specific therapy other than the surgical procedure she underwent several years ago." (Tr. 183) The tentative nature of this remark appears to have resulted from the fact that Dr. Aronson conducted a one-time consultative physical examination which did not include a detailed examination of Bulpett's bowel problems.

The Administrative Law Judge went on to conclude that Bulpett's colitis condition is adequately controlled through a "low salt diet." (Tr. 69) There is no support whatsoever for this conclusion. In fact, the evidence suggests that Bulpett is on a low salt diet for her hypertension and that the diet sometimes exacerbates her colitis condition. (Tr. 83)

Even if the analysis of Bulpett's physical condition is restricted solely to a review of the reports of the unidentified examiner, Dr. Eliapoulas, and Dr. Aronson, those reports do not provide substantial support for a conclusion that Bulpett is capable of performing "light work." None of those reports offers any conclusions regarding Bulpett's exertional limitations or the effects of her medical problems on her capacity to perform work. The Administrative Law Judge disregarded in its entirety the only medical report which focused on this question—that of Bulpett's treating physician, Dr. Jack Skowronski, who apparently has been seeing Bulpett quarterly since 1981. (Tr. 83, 168)

In his report, dated January 18, 1984, Dr. Skowronski offered the following opinions based on his examinations of Bulpett: she does not have the physical capacity to sit or stand longer than ½ hour; she does not have the physical capacity to do frequent bending; she does not have the physical capacity to lift frequently any weight during six hours of an 8–hour interval; those limitations have lasted, or can reasonably be expected to last, for 12 months or longer. Dr. Skowronski went on to state that Bulpett's allegations of pain are consistent with the following "clinical and/or objective findings":

> Dx: (1) Arthritis of the spine. (2) Crohn's disease.

856

Has marked limitation of activity such as in bending, walking and prolonged sitting secondary to her arthritis. Various arthritic medications have not helped or were not tolerated secondary to gastrointestinal symptoms.

She also has Crohn's Disease of the bowel with chronic diarrhea which is disabling.

(Tr. 191)

██ Although the opinions and diagnosis of a treating physician are not necessarily entitled to more weight than those of other medical consultants, *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982), such opinions should be considered carefully in the absence of grounds to question their reliability. *See Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir.1981). The Administrative Law Judge disregarded Dr. Skowronski's report in its entirety, purportedly on the ground that it was "conclusory in nature and not supported by objective findings." (Tr. 68) This outright rejection of the report is particularly startling given the willingness of the Administrative Law Judge to rely on one-page checklist forms (supplied by the state agency) completed by Dr. Eliapoulas and by an examiner whose identity is unknown.

Taken as a whole, the medical records do not support the conclusion of the Administrative Law Judge that Bulpett is capable of performing light work. This result is not affected by the testimony offered by the vocational expert. At the hearing, the Administrative Law Judge asked four relevant questions of vocational expert O'Shea:

Q. However, she is plagued with her bowel disease, her arthritis, her hypertension, and particularly her bowel problem requiring frequent trips to the bathroom. In view of her age, her education, assume I find that the evidence substantiates her constellation of complaints, what jobs do you think she could do?

A. With that assumption, Your Honor, it would be my opinion that she would not be able to undergo or take any kind of substantial gainful activity.

Q. Assume I find that the evidence doesn't (INAUDIBLE), then what light jobs could she perform?

A. In my opinion under that assumption, Your Honor, that she would be able to work as a packer in light industry, as a food counter worker, as an assembler, again as an inspector, again in light industry. These would be representative of the kind of jobs seeing she has no transferable skills (INAUDIBLE) regulations.

Q. Now, what these jobs either assembly or all four of them allow for her to frequent the Ladies Room?

A. Well, if she had to go frequently it would seem to me it would interfere with her performance (INAUDIBLE).

Q. But again that would depend on—

A. It depends on the frequency and severity, the severity of the situation, exactly.

(Tr. 91–92) It is clear that the vocational expert's opinion regarding specific jobs in the economy is irrelevant unless the Administrative Law Judge could properly conclude, based on substantial evidence, that Bulpett was capable of "light work."

Bulpett raises two additional issues on this appeal. She argues that the Administrative Law Judge failed to give proper weight to her allegations of pain and that the Administrative Law Judge failed to consider the cumulative effect of all of her impairments. Because the Court finds considerable merit in these arguments, they will be addressed briefly.

In his decision, the Administrative Law Judge conceded that Bulpett "does feel some discomfort from her back condition." (Tr. 69) However, he clearly discounted Bulpett's testimony regarding the severity of this pain:

[A]ssessments based upon available objective data present this condition as being one of mild degenerative change. No deformity, fracture, nerve root impingement or disc lesion has been found. The lack of significant pathology affects the credibility of the claimant's symptoms as to severity.

(Tr. 69) Even assuming the Administrative Law Judge is accurate in his characterization of Bulpett's degenerative disease as "mild," that does not necessarily mean Bulpett is not in severe pain. Bulpett presented competent evidence, through both her hearing testimony and Dr. Skowronski's report, that her pain is severe.

■ In considering a complaint of pain, there must be some objective medical evidence of a *cause* of pain. *Miranda v. Secretary of HEW*, 514 F.2d 996, 999–1000 (1st Cir.1975). However, once pain is properly at issue, as it is here, the Administrative Law Judge must evaluate its *severity* by considering all of the evidence, both objective and subjective. *Horne v. Heckler*, No. 83–2837–Z, slip op. at 4 (D.Mass. April 25, 1985). Thus, to the extent the Administrative Law Judge thought the severity of Bulpett's pain must be shown by objective medical evidence, he was in error. The Administrative Law Judge is entitled, of course, to weigh the credibility of such evidence. *Id.*

■ To fairly determine Bulpett's application, the Administrative Law Judge was required to consider the cumulative effect of Bulpett's impairments. Although the Administrative Law Judge separately considered Bulpett's three major impairments, i.e. regional enteritis, arthritis, and hypertension, he made little effort to assess the combined effects of these physical problems on her ability to perform gainful work. It is inappropriate to view several disabilities as isolated from one another. *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir.1974). As the court in *Landess* observed:

> Each illness standing alone, measured in the abstract, may not be disabling. But disability claimants are not to be evaluated as having several hypothetical and isolated illnesses. These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being.

*Id.*

Bulpett has identified several physical impairments which may limit her ability to meet the strength or exertional requirements of certain jobs. In addition, she presented evidence of significant nonexertional limitations. For example, she testified that she has little control over her bowel movements and has chronic diarrhea due to her Crohn's disease and the surgical removal of part of her terminal ileum. (Tr. 29) Even if such problems did not relate directly to her ability to lift, bend, or stand, they clearly have an impact on her ability to perform certain work. This is substantiated by the vocational expert who testified at the hearing that if Bulpett had to frequently use the bathroom, "it would interfere with her performance." (Tr. 92)

■ Such nonexertional factors are particularly important in this case because of the Administrative Law Judge's primary reliance on the Grid to determine that Bulpett was not disabled. Although the Grid is appropriately used for guidance in a case involving nonexertional or multiple impairments, the Administrative Law Judge must go further. "It is axiomatic that where there are nonexertional factors or impairments which limit the range of activity a claimant might perform at a given exertional level, the rules of the [Grid] are not conclusive as to disability." *Rosa v. Secretary of HHS*, 547 F.Supp. 712, 717 (D.Mass.1982). Although certain of these nonexertional factors were mentioned at the hearing, that hearing lasted only fifteen minutes and represented only a cursory examination of a complicated case.[1] Neither the hearing transcript nor the deci-

---

1. Bulpett argues on appeal that the Administrative Law Judge failed to adequately develop the record and that such failure is cause for remand. The First Circuit has recognized the Secretary has a duty to develop evidence in certain circumstances, particularly where the claimant is not represented by counsel or is obviously mentally impaired. *Deblois v. Secretary of HHS*, 686 F.2d 76, 80–81 (1st Cir.1982). Although Bulpett's argument is not so compelling here since she was represented by counsel at the hearing, the Secretary should be careful on reconsideration to ensure that she is afforded a meaningful hearing. *See Roy v. Secretary of HHS*, 512 F.Supp. 1245, 1252 (C.D.Ill.1981) ("Even if the claimant is represented by counsel,

858

sion of the Administrative Law Judge suggest that the nonexertional impairments were properly considered in conjunction with Bulpett's other impairments. Thus, the conclusion of no disability, based as it is primarily on a mechanical application of the Grid, is not supported by substantial evidence.

## V.

Accordingly, the decision of the Secretary is reversed, and the case is remanded for further hearing and decision consistent with this opinion. In particular, the Secretary must re-evaluate the medical evidence in the record and consider any additional medical evidence necessary to reach a fair conclusion as the nature of Bulpett's impairments and how those impairments relate to her ability to perform work. Properly admitted evidence from Bulpett's treating physician ought be considered, as well as subjective evidence relating to the level of Bulpett's pain. Finally, the Secretary must evaluate the cumulative effect of all of Bulpett's ailments, including nonexertional impairments, and must avoid a mechanical application of the Grid in determining whether Bulpett is disabled.

It is so ordered. Reversed and remanded to the Secretary for further action in accordance with this opinion.

the duty remains on the ALJ to develop the facts fully and fairly.")