Casilda MELENDEZ, Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant.

No. CIV. 02–2073 JACDRD.

United States District Court,
D. Puerto Rico.

June 16, 2003.

Pedro R. Vazquez, III, Guaynabo, PR,
for Plaintiff.

Camille L. Velez–Rive, A.U.S.A., United States Attorney's Office, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

CASTELLANOS, United States Magistrate Judge.

Plaintiff, who had filed an application for disability insurance benefits alleging inability to work since March 16, 1997, filed this action seeking judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying her entitlement to a period of disability and ensuing benefits. Social Security Act, 42 U.S.C. § 405(g).

The initial application was denied and after the Appeals Council remanded with instructions to further consider the same, and administrative hearing was then held on March 3, 1999. The Administrative Law Judge issued an opinion again denying benefits and it thereafter became by adoption the final decision of the Commissioner.

The presiding Administrative Law Judge (ALJ) considered claimant's complaints of severe spasms in her neck, shoulder and back, a hand condition, headaches, and pain in her waist and legs for alleged pinched nerves, in addition to a mental condition. The medical record indicated regular medical care for cervical and dorsolumbar strains, cervical lumbar myositis, bilateral carpal tunnel syndrome and a cubital tunnel syndrome. The ALJ determined that these conditions would restrict the claimant's ability as to lifting or carrying weight or the use of her hands, insofar as constant or repetitive movements. The medical evidence showed that electromyogram and nerve conduction studies were normal. A consultative neurologist's examination did not find any atrophy or deficit in all areas examined and there was full range of movements as to all extremities, as well as, in the dorso lumbar flexion.

Claimant also presented a record of psychiatric treatment with a diagnosis of major depression that was treated with medication, such as Paxil 30mgs. and Elavil. Notwithstanding, the ALJ determined the record and his appreciation of claimant's demeanor showed that her residual functional capacity was not significantly compromised by the mental condition. She retained the ability to understand, carry out, and remember simple instructions, use appropriate judgment and respond adequately to supervision and co-workers.

Considering that claimant had no major neurological compromise and that her mental condition did not impose additional limitations to her residual functional capacity within the requirements of her past relevant work, the ALJ found her not to be under disability.

The record establishes that above plaintiff had worked as an operator inspecting products for about four years which entailed mostly being seated and carrying out visual inspection of the goods. She also operated a label machine and worked as a team leader, as a surgical instruments material inspector.

The vocational expert's testimony considered that the physical demands of the latter were light and did not require special education but rather, on the job training. Likewise as to the demands for the position of ticketer or label production, both of which were light. The jobs were elemental and non-skilled. Even if the person carrying out these jobs had some hand movement limitation, she could still perform same. If the person was considered to suffer some kind of pain that was light to moderate, which responded to medication, the vocational expert still con-

sidered her able to perform this kind of work.

■■■■ To be found disabled, claimant must suffer a severe impairment which precludes her ability to perform other forms of substantial gainful activity. The initial showing of disability places on claimant the burden to show inability to perform her past relevant job. The burden then shifts to the Commissioner to prove the existence of other jobs in the national economy that plaintiff can still perform. *Goodermote v. Secretary of Health & Human Servs.,* 690 F.2d 5 (1st Cir.1982); *Torres v. Secretary of Health & Human Servs.,* 677 F.2d 167 (1st Cir.1982). *See Vázquez v. Secretary of Health & Human Servs.,* 683 F.2d 1 (1st Cir.1982); *Geoffroy v. Secretary of Health & Human Servs.,* 663 F.2d 315 (1st Cir.1981).

This Magistrate has examined the medical evidence and the record as a whole. Dr. Víctor Delgado Colón, a treating physician, first examined plaintiff in 1993 for cervical and dorsal pain. She suffered from muscle spasms and hand pain. In 1997 Dr. Delgado Colón made a diagnosis of myositis of the cervical and dorsal area and major depression.

The nerve conduction study dated 1997 indicates the presence of carpal tunnel syndrome, bilateral, and cubital tunnel syndrome, left. Other muscles tested were normal and no denervation potentials or cervical radiculopathy were indicated. The cervical spine was found with well preserved vertebral body heights and discs spaces. The lumbosacral area had lordosis compatible with muscle spasm and/or lumbar myositis. There was minimal anterior spondylotic changes at L3, L4, and L5. The study on both hands and wrists in 1994 showed very minimal changes of degenerative joint disease.

The record of the Manatí Physical Therapy Clinic in 1997, where the patient was assisted for complaints of back pain, indicated the presence of moderate spasms in the trapezium with a normal sensation. Upper and lower extremities had normal range of movement.

In regard to the psychiatric condition, Dr. Indra Febles Gordian indicated the patient was first treated in early 1997 and she held monthly visits through August of 1998. The record describes numerous somatic symptoms and gradual emotional deterioration since the patient was separated from her job in March of 1997 and referred to the State Insurance Fund. The patient is described as relevant and coherent. She had a depressed mood and affect but was oriented and able to repeat three of six digits backward and forward. Her memory was preserved for remote events, was easily distracted, and had poor lapse of attention. Clinically the patient was functioning within an average intellectual makeup. The diagnosis was severe depression and she received pharmacological treatment, to include Paxil and Xanax.

There is a psychiatric evaluation by Dr. Juan G. Soto Silva in 1998. Her treating physician had diagnosed Prozac 20 mg. which was afterwards changed to Paxil 30 mg. by Dr. Indra Febles. The patient continues with medication for her back and cervical pain and had received treatment with the State Insurance Fund from May 1997 through February 1998. She also suffered from anemia, with complaints of lack of energy, but her weight had not changed. Dr. Soto Silva describes the patient as one who takes care of her basic personal needs and grooming and limited herself to do only light house chores and cooking. She drove around when necessary. Her ability to initiate social contacts was acceptable and she shared with neighbors in a superficial level. She would also get along well with her relatives and visit-

ed them. She watched television and listened to the radio. The patient had a sad facial expression. She could remain seated, although changing positions, during the whole interview. She is described as alert, cooperative, and polite, with normal psychomotor activity and well coordinated movements. She had a normal gait and her speech was fluent. The mood was depressed. Thoughts were organized and logic and the answers were relevant. Her attention was good, and so was her concentration, memory, and control of impulses. The diagnosis was of major depression, moderate.

There is a consultative neurological evaluation by Dr. Evelyn Rodríguez Aja in 1998. The chief complaint was of pain in the cervical and dorsal area and in the hands. No atrophy was observed and the motor system had a normal tone. She walked well on toes and heels and sensitivity, pain, and touch were normal. Palpation of the spine revealed moderate spasms but no swelling or deformities. The diagnosis was for bilateral carpal tunnel syndrome, left cubital tunnel syndrome, cervical sprain, and cervicolumbar myositis. The patient was able to perform rapid movements with the four extremities and could carry, pull, push, and grab heavy objects. She was able to pinch, make a fist, and exert opposition movements and could travel, be elevated, and bend. The range of motion chart showed full range of movements.

The administrative record shows there was adequate consideration of the medical evidence and of this plaintiff's statement as to her past work requirements. The vocational expert, Mr. Ariel Cintrón, further testified as to the functional limitations presented by the ALJ which did not preclude the performance of plaintiff's previous kind of work. The record was fully developed as to physical and mental demands of plaintiff's past relevant work.

■ To review the final decision of the Commissioner, courts must determine if the evidence of record meets the substantial evidence criteria to support the Commissioner's denial of plaintiff's disability claim. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[1]

This Magistrate concludes that an examination of the evidence in the record as a whole shows the existence of substantial evidence to support the decision of the Commissioner denying plaintiff's entitlement to a period of disability and benefits. The decision of the Commissioner is thus AFFIRMED.

IT IS SO ORDERED.

---

1. *Falú v. Secretary of Health & Human Servs.*,     703 F.2d 24 (1st Cir.1983).