Iris Maldonado DAVILA, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. CIV. 01–1309(HL–JAC).

United States District Court,
D. Puerto Rico.

Oct. 31, 2003.

Cristina Muñoz Gándara, Bayamón, PR, for Plaintiff.

Camille L. Vélez, AUSA, U.S. Attorney's Office, Torre Chardón, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASTELLANOS, United States Magistrate Judge.

Above plaintiff filed an application for disability insurance benefits with the Social Security Administration that was initially denied. She was then a thirty three (33) years old individual, with twelfth grade education, who worked as a machine operator, and requested benefits because of pain in her cervical and lumbar area and in the shoulders. She claimed having subsequently developed a mental condition for which she thereafter initiated psychiatric treatment.

In its decision of the Administrative Law Judge (ALJ) indicated that claimant should not be considered to be under disability. This was thereafter adopted as the final decision of the Commissioner of Social Security .(the Commissioner). Plaintiff now seeks judicial review of this

final decision denying her application for entitlement to a period of disability and ensuing benefits. Social Security Act, 42 U.S.C. § 405(g).[1]

■ To establish entitlement to benefits, claimant has the burden of proving that she became disabled within the meaning of the Social Security Act. Disability is determined in §§ 216(i)(1) and 223(d)(1), 42 U.S.C. 416(i)(1) and 423(d)(1). *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987); *Deblois v. Secretary of Health & Human Services,* 686 F.2d 76, 79 (1st Cir.1982). Claimant may be considered disabled if she is unable to perform any substantial gainful employment because of a medical condition that is expected to last for a continuous period of at least 12 months. The impairments imposed by the condition or combination of conditions must be so severe as to prevent her from working in her usual occupation and in any other substantial gainful employment further taking in consideration age, education, training, and work experience. Social Security Act, 42 U.S.C. 423(d)(2)(A).

■ Once claimant has established she is unable to perform her previous work, it is then that the burden shifts to the Commissioner to prove the existence of other jobs in significant numbers in the national economy that claimant would be able to perform. *Goodermote v. Secretary of H.H.S.,* 690 F.2d 5 (1st Cir.1982); *Torres v. Secretary of H.H.S.,* 677 F.2d 167 (1st Cir.1982). *See Vázquez v. Secretary of H.H.S.,* 683 F.2d 1 (1st Cir.1982); *Geoffroy v. Secretary of H.H.S.,* 663 F.2d 315 (1st Cir.1981). In the case at bar, no additional discussion is required since the ALJ determined that claimant was able to return to her former kind of work.

The ALJ concluded that claimant's combination of medical conditions included a diagnosed trapezius fibromyalgia and cervico-lumbar myositis. She had received treatment at the State Insurance Fund. Still, by the year 1993, there was no motor or sensory deficits, she had full range of motion of upper and lower extremities and a CT Scan of the thoraxic spine appeared normal. There was a CT Scan of the lumbar spine showing findings compatible with bulging annulus fibrosus and small central disc herniation with mild compression of the dural sac at L4–L5. A neurologist's examination found mild spasms over the cervical and paravertebral muscles and moderate spasms of the trapezius, but no motor deficit. There was normal gait and negative Romberg.

In regard to the psychiatric condition, the diagnostic Impression of the treating psychiatrist reported major depression with melancholia. The patient was followed with various antidepressant and hypnotic medications. A consultative psychiatric evaluation found good ability for occupational adjustments and in maintaining attention and following work rules, but poor concentration. She was able to interrelate socially and was observed oriented, logical, coherent, and relevant. Claimant's admitted at times she was able to do house chores including dish washing, cooking, and loading clothes into the machine, attending religious activities, and going shopping.

As such, the ALJ determined, after an administrative hearing held in July 1, 1997, that claimant had only slight to moderate restrictions of activities of daily living,

---

1. Section 205(g) provides:
   "[t]he court shall have power to enter, upon the pleadings and transcripts of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing".

moderate difficulties in maintaining social functioning and seldom deficiencies of concentration. Her complaints of impairments were found credible to the extent that she could not perform more than medium work. Thus retained the residual capacity to perform her previous work as a sewing machine operator.

The examination of the record shows claimant initially received treatment after a work accident in 1989 upon complaints of neck pain, numbness in her extremities and back pain. She was prescribed Norflex 30 mg. and was sent back to her home. X-rays of the cervical and thoracic spine appeared normal. She suffered from muscle spasms in the lumbosacral spine and received physiotherapy but was allowed to continue working. There was complete range of motion but tenderness at the paravertebrals in the neck and shoulders. The back area had also tenderness and moderate muscle spasms in the trapezius with functional range of motion in all planes, without any sensory deficit. The diagnosis was of trapezius fibromyalgia.

After receiving therapy, the patient reported to feel better but thereafter the pain returned, having difficulty of active movement and during change in positions. Treatment by the State Insurance Fund for cervical and lumbar myositis required injection, without complications, physical therapy, and four days of rest in 1993. She is described as alert, active, showing pain, with decrease range of movement of the cervical area. She complained of numbness in the legs. Examinations revealed mild muscle spasms, slowly improving. A Ct–Scan of the thoracic spine appeared as a normal impression. In 1994, CT–Scan of the cervical and dorsal regions had negative results. The electromyographic examination results in 1993 and 1994 were normal for muscles tested. The MRI of the cervical spine in 1994 showed no evidence of fracture and the contents of the foramen magnum were normal. There was suggestion of early degeneration of the C4–5, C5–6 and C6–7, but all of the discs maintained normal height and shape and there was no disc protrusion.

In 1994 a venous doppler examination of the upper extremities showed circulation within normal limits and no deep nor superficial thrombosis.

In 1995, the nerve conduction study was compatible with bilateral S1 root lesion, worst on the left side. X-rays of the cervical spine showed vertebral bodies, disc spaces and posterior elements well aligned and preserved and the neural foramina appeared intact. The neurological evaluation by Dr. M. Noriega Sánchez, refers to treatment for cervical pain and lumbar pain irradiating to the left leg. The patient is described as alert, oriented in the three spheres, with good memory, cooperative, appropriate, and with good attention span. The upper extremities displayed pain on palpation of the cervical muscles and moderate spasm of the Trapezius muscle. There was no sensory deficit. The diagnosis was of chronic cervical myositis, moderate cervical spasm, mild thoracic outlet syndrome, and mild hypertension. An electromyographic study performed in October 14, 1994, had findings compatible with left C8–T1 root irritation and right thoracic outlet syndrome. A cervical MRI reported early disc degeneration at C3–C4 through C6–C7. The patient was given antidepressants. She had elevated liver enzymes for which the anti-inflammatory medications were not recommended. In 1995, EMG and NCS, referred above, showed S1 root compromise bilaterally and decreased deep tendon reflex on left Achilles tendon. The neurologist found no evidence of radiculopathy. The final diagnosis was S1 root compromise; thoracic outlet syndrome; chronic cervical and lumbar myositis, depression, hypertension, and musculo-skeletal pain syndrome.

In 1996 there is a CT–Scan of the lumbar spine compatible with annulus fibrosus and small central disc herniation with mild compression of the dural sac at L4–L5. A neurologic report dated June of 1997 refers to the patient having conservative treatment initially, resting from work for about a year, and then returning for two years when the symptoms recurred and she finally stopped working. Because of elevated liver enzymes, she takes medication very occasionally. The patient presented mild spasm and tenderness over the cervical area and moderate pain and limitation of movement, except in extension and flexion. As to the lumbar region, there was slight pelvic tilt to the left, flattening of the normal lumbar lordosis, tenderness over the lumbosacral spine, with bilateral and moderately severe spasm, and tenderness over the paravertebral muscles. The motor system was normal. Measurements of both calves revealed no significant difference. Coordination, station and gait were normal. The patient was recommended not to carry objects over twelve pounds and not bend over nor reach above shoulder level or remain in the same position for extended periods. There is reference to a CT Scan of the cervical spine dated February 23, 1996, that had a normal impression. Dr. Nancy Méndez, a radiologist, refers to the lumbosacral area as showing tiny osteophytes. The intervertebral disc space L5–S1 was decreased, considered discal disease. The rest were well preserved. The posterior elements were intact. Straightening was compatible with paravertebral muscle spasm, minimal scoliosis.

Dr. José Ríos Cervantes summarized the psychiatric treatment that initiated in April of 1995 and monthly up to December of same year. The patient had complaints of inability to sleep and of being sad and distressed. She remained alert but in little contact with the interviewer and seemed appropriate, apprehensive, and slow. Psychomotor activity was restrained and verbalization was slow. She was logical, coherent, pertinent and relevant. There was moderate difficulty for concentration, with some blocking, and with fragmented association of ideas. The ability to conceptualize and to abstract was preserved and she had no hallucinatory or illusory content. Her capacity to maintain attention and concentration was diminished. Orientation was good in person and space and judgment was preserved. The diagnostic impression was of major depression with melancholia.

Dr. Ríos Cervantes submitted another report in 1997. In addition to above described, there was then marked difficulty for concentration, with some blocking but with adequate association of ideas. The remote memory seemed to be slightly better. The affect was dull and her mood was one of severe depression.

Dr. Giovanna Pietri submitted in 1997 a psychiatric evaluation. The patient followed treatment with Dr. Ríos Cervantes and complied with her medications, including Paxil 20 mg., Klonopin, and Restoril. She reports feeling improvement with her sleep problems. The patient showed normal gait and coordination, mild psychomotor retardation, with good eye contact. She is cooperative and spontaneous, alert, coherent, relevant, and logic. There are no flights of ideas, no blocking or loosening of associations. Affect is appropriate, with moderate depressed mood. She is oriented in time, place, and person and has good immediate and recent memory. Attention was good and so was the ability to understand and follow instructions without difficulty. Concentration is poor, but she had good insight and judgment. The diagnostic impression was of major depressive episode, moderate.

To review the final decision of the Commissioner, courts must determine if the evidence of record meets the substantial evidence criteria to support the Commissioner's denial of plaintiff's disability claim. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above-stated substantial evidence.[2]

■ The amendments to the Social Security Disability Benefits Act of 1984, Pub.L. No. 98–460, Section 3, 98 Stat. 1794 (1984), make clear there must be a medical impairment that can reasonably be expected to produce the pain alleged. Other evidence, including statements of claimant and/or his physician shall be considered. Although the Commissioner cannot be at the whim of any subjective allegation of pain, so long as the statements of claimant or of his physician as to pain are not inconsistent with the medical findings these should permit a finding of disability where the medical findings alone would not. *Avery v. Secretary,* 797 F.2d 19 (1st Cir.1986).

Insofar as pain is concerned to make a determination of pain as a disabling factor, medical signs or findings must show there is a medical condition that could be reasonably expected to produce said symptoms. 20 C.F.R. 404.1529.

■ Where a potential basis for pain and restriction exists, the subjective symptoms must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. *Gray v.*

*Heckler,* 760 F.2d 369, 374 (1st Cir.1985); *Alvarado v. Weinberger,* 511 F.2d 1046, 1049 (1st Cir.1975). When pain or restriction is shown to exist, the actual degree of pain plaintiff suffers is for the Commissioner to evaluate in light of the supporting evidence. *Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662, 665 (1st Cir.1981). Although pain is subjective, clinical techniques are appropriate to use in evaluating the probability of its existence, magnitude and disabling effects. *Rico v. Secretary of Health, Education and Welfare,* 593 F.2d 431, 433 (1st Cir.1979).

■ An examination of the medical evidence and of the record as a whole shows that plaintiff is considered a younger individual, who retains the residual functional capacity for work not exceeding medium kind of exertion. Although her treating physicians included at times in the evaluations personal observations that she was considered disabled for work, a treating physician's opinion is not the final word on a claim of disability. Still, under the regulations, the ALJ cannot altogether ignore a treating physician's opinions. 20 C.F.R. § 404.1527(d)(2). *See Goatcher v. United States Dept. of Health & Human Services,* 52 F.3d 288, 289–90 (10th Cir.1995).

■ Having examined the record as a whole, there is substantive evidence to support the administrative decision denying the petition for disability. As such, and without attempting to substitute the judgment of the Commissioner, IT IS AFFIRMED.

The Clerk is to enter judgment accordingly.

IT IS SO ORDERED.

---

**2.** *Falú v. Secretary of Health and Human Ser-* *vices,* 703 F.2d 24 (1st Cir.1983).