Rafael A. VAZQUEZ, Plaintiff,
Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 81–1566.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1982.

Decided June 16, 1982.

Carlos M. Mangual Lopez, Rio Piedras, P. R., for plaintiff, appellant.

Linda Lee Walker, Asst. Regional Atty., Dept. of Health and Human Services, New York City, with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., J. Paul McGrath, Asst. Atty. Gen., Civil Div., Dept. of Justice, and Annette H. Blum, Acting Regional Atty., Dept. of Health and Human Services, Washington, D. C., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, GIBSON,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

The appellant, Rafael Vazquez, is a former recipient of disability insurance benefits under the Supplemental Security In-

* Of the Eighth Circuit, sitting by designation.

come program of the Social Security Act. 42 U.S.C. § 1381 *et seq.* In May 1978, the Secretary of the Department of Health and Human Services, having ultimate responsibility for administering the program, determined that Vazquez's physical condition had improved and terminated the benefits. Vazquez contested the Secretary's determination and obtained a *de novo* hearing before an Administrative Law Judge. The ALJ agreed with the Secretary that Vazquez was no longer qualified for benefits; Vazquez exhausted all internal agency appeals; the district court granted summary judgment in favor of the Secretary; and Vazquez appeals from this decision. *See* 42 U.S.C. § 405(g).

■ The ultimate question in this case is whether Vazquez is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines "disability" as

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . [lasting at least a year and] of such severity that [the claimant] . . . is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for such work.

It is well established that, in applying this statutory standard, the claimant has the burden of showing a disability serious enough to prevent him from working at his former jobs, at which point the burden shifts to the Secretary to show the existence of other jobs in the national economy that the claimant can nonetheless perform. *Torres v. Secretary of Health and Human Services,* 677 F.2d 167, 168 (1st Cir. 1982); *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 317 (1st Cir. 1981).

Health and Human Services ALJs hear thousands upon thousands of cases each year. "In fiscal 1976, for example, the agency's ALJs disposed of 180,000 cases; by contrast, during that same time period, only 130,000 civil and criminal matters were terminated by the entire Article III court system. Approximately 8,000 appeals were brought in 1978 from agency disability-related determinations to the federal district courts; this litigation 'constitute[d] the largest portion of the workload of the federal judiciary from federal agencies.'" *Santise v. Schweiker,* 676 F.2d 925, 930 (3d Cir. 1982), *quoting Dobrowolsky v. Califano,* 606 F.2d 403, 409 n.18 (3d Cir. 1979). To simplify the task of proving the existence of a disability in these cases, the Secretary has promulgated a set of Medical-Vocational Guidelines ("the Grid"). 20 C.F.R. Part 404, Subpart P, Appendix 2 (1981). The Grid is basically designed to help the Secretary, when appropriate, satisfy his burden of proving the existence of other jobs in the economy that the claimant can perform.

The Grid is basically a matrix, combining different permutations of the four essential factors set out in the statute (age, education, work experience, and residual work capacity) and stating, as to each combination, whether a claimant with those characteristics is "disabled" or "not disabled." It consists of three separate tables, one for those who retain the residual exertional capacity to perform "sedentary" work, one for those who retain the residual capacity to perform "light" work, and one for those who retain the residual capacity to perform "medium" work. Each table has five columns for rule number, age, education, work experience, and decision. Thus, each row on the table presents a different combination of age, education, and work experience categories. The ALJ simply selects the proper table and row based on the characteristics he finds the claimant to possess, and reads the decision, "disabled" or "not disabled" from the right-hand column in that row.

The Secretary's instructions for the use of the Grid are explicit. The ALJ is to determine the claimant's relevant characteristics. Each of these "findings of fact is subject to rebuttal and the individual may present evidence to refute such findings." *Grid* § 200.00(a). Once found, the claimant's characteristics will either fit squarely within one of the rules in the table or they will not. If they do—if the "findings of fact . . . coincide with all of the criteria of a particular rule"—then "the rule *directs* a conclusion as to whether the individual is or is not disabled." *Id.* (Emphasis added.) If the facts do not fit squarely within a rule because they reveal a borderline case or a case lying between two rules, those rules still "provide guidance;" they are to be given "consideration," and they "provide an overall structure for evaluation." *Id.* § 200.00(d). If instead, the facts do not fit squarely within a rule because the claimant has a combination of impairments—particularly if the claimant has a nonexertional impairment—the guidelines suggest still more individualized consideration. *Id.* § 200.00(e).

We have previously held the Grid to be a proper exercise of the Secretary's general rulemaking authority under 42 U.S.C. § 405(a). *See Torres v. Secretary of Health and Human Services, supra. See also Santise v. Schweiker, supra; Cummins v. Schweiker*, 670 F.2d 81 (7th Cir. 1982); *Salinas v. Schweiker*, 662 F.2d 345 (5th Cir. 1981) (grid upheld as a valid exercise of administrative notice); *Frady v. Harris*, 646 F.2d 143 (4th Cir. 1981). *But cf. Campbell v. Secretary of Health and Human Services*, 665 F.2d 48, 53–54 (2d Cir. 1981), *cert. granted*, 50 U.S.L.W. 3994 (June 22, 1982); *Hall v. Harris*, 658 F.2d 260, 268 (4th Cir. 1981). Vazquez does not challenge the validity of the Grid, but rather the manner in which it was applied in his case.

All parties agree that Vazquez, who was fifty-five years old at the time of the ALJ hearing, is properly classified as an "individual of advanced age." They also agree that his education, discontinued in the tenth grade, should be classified as "limited." They disagree on the proper classification of his residual functional ability, that is, whether his impairments (arthritis, obesity, high blood pressure, and shortness of breath, among others) are so severe that he can do no work at all, that he can only do "sedentary" work, or that he can do "light" work. Finally, they disagree about the classification of Vazquez's previous work experience.

Based upon these facts, seven rules are potentially applicable to Vazquez. If Vazquez can perform "light" work, three rules from the "light" work table might govern his case:

| Rule | Age | Education | Previous work experience | Decision |
|---|---|---|---|---|
| 202.01 . . . . . . . . | Advanced age . . | Limited or less . . . . . . . . . . | Unskilled or none . . . . . . . | Disabled. |
| 202.02 . . . . . . . . | . . . . do . . . . . . . | . . . . do . . . . . . . . . . . . . . . | Skilled or semiskilled—skills not transferable. | Do. |
| 202.03 . . . . . . . . | . . . . do . . . . . . . | . . . . do . . . . . . . . . . . . . . . | Skilled or semiskilled—skills transferable [1]. | Not disabled. |

If he can perform "sedentary" work, there are three rules from the "sedentary" table that might apply:

| Rule | Age | Education | Previous work experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 201.01 ......... | Advanced age .. | Limited or less ........... | Unskilled or none ........ | Disabled. |
| 201.02 ......... | ....do ....... | ....do ............... | Skilled or semiskilled—skills not transferable [1]. | Do. |
| 201.03 ......... | ....do ....... | ....do ............... | Skilled or semiskilled—skills transferable [1]. | Not disabled. |

If Vazquez cannot even perform "sedentary" work, the seventh rule would find him disabled.

■ The ALJ found that Vazquez could not perform his previous work, thus calling the Grid into play. He discussed the medical evidence at length and concluded that Vazquez could do "light" work. He also briefly reviewed Vazquez's previous work experience, characterizing it as "skilled to unskilled." He then held that Rule 202.03 applied—that rule which applies to persons who can perform "light" work and have previous work experience that was "skilled or semi-skilled [with] skills transferable." He concluded that Vazquez was "not disabled." Since the Grid, in this respect, treats similarly those capable of "sedentary" and "light" work, we need not consider appellant's argument that he had a residual capacity for only "sedentary" work. *Compare* Rules 201.02 and 201.03 *with* 202.-02 and 202.03.

The major flaw that we find in the ALJ's decision is his failure to find explicitly (or to indicate the basis for his implicit finding) that Vazquez's skills were transferable. The ALJ classified some of Vazquez's previous work as skilled. That work included pushing automobile bodies onto an assembly line, bartending, stevedoring, and operating a small coffee bar. But, the ALJ did not indicate what skills that Vazquez acquired in these jobs could be transferred to the jobs which the record suggests he considered Vazquez now able to perform. These latter jobs included being an electronics assembler, a hand packer, a punch press operator, a coder, a riveter, a tablet line inspector, a packager, a bottle inspector, or a bottle cleaner. Neither the ALJ, nor the record, anywhere discusses "trans-

ferability." Reference to the regulation explaining "transferability" does not help. It states,

Transferability is most probable and meaningful among jobs in which—

(i) The same skill or a lesser degree of skill is required;

(ii) The same or similar tools and machines are used; and

(iii) The same or similar raw materials, products, processes, or services are involved.

20 C.F.R. Part 404, Subpart P, § 404.1569. There is no obvious similarity between the tools, machines, raw materials, products, processes, or services in Vazquez's past jobs and those in his potential jobs.

This lack is particularly serious because the record suggests that the ALJ may well have believed that the jobs Vazquez now can perform are really "unskilled" or that, even though he does not now possess the requisite skills to perform them, he can readily learn those skills. A vocational expert testified to this effect. And, the Secretary argues that this testimony is a reason *for* upholding the ALJ. We disagree, however, precisely because *this testimony amounts to a claim that Vazquez is capable of learning and performing work which exists in the national economy even if he lacks transferable skills.* If this claim is true, it amounts to the exact opposite of the conclusion that the Grid reaches and directs ALJs to apply. Rules 201.01, 201.02, 202.01, 202.-02. If the vocational expert is right, then the Grid is wrong, and *vice versa.* In the face of any such conflict, the applicable legal principle directs an agency to follow its own rules. *United States v. Nixon,* 418 U.S. 683, 694–96, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974); *Arizona Grocery Co. v.*

*Atchison, Topeka & Sante Fe Ry.*, 284 U.S. 370, 388–89, 52 S.Ct. 183, 185–86, 76 L.Ed. 348 (1932). If the agency seeks to change or to disregard the Grid or believes it inapplicable here, it must, at a minimum, explain its reasoning.

Thus, because of the lack of specific findings and the genuine possibility that the ALJ adopted a position contrary to that of the Grid, we vacate the judgment of the district court and remand the case with instructions to enter an order remanding the case to the Secretary with directions that he reconsider Vazquez's disability claim in light of this opinion, and that he give reasons for departing from the Grid if appropriate. *Small v. Califano*, 565 F.2d 797, 801 (1st Cir. 1977); *Pelletier v. Secretary of Health, Education and Welfare*, 525 F.2d 158, 160–61 (1st Cir. 1975).

*So ordered.*