810 F.2d 201
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Pierce JONES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1843.
 United States Court of Appeals, Sixth Circuit.
 Nov. 24, 1986.
 
 Before NELSON and RYAN, Circuit Judges, and ENSLEN, District Judge.
 PER CURIAM.
 
 
 1
 Pierce Jones appeals from a district court judgment affirming an agency denial of a social security disability claim. Mr. Jones asserts that severe back pain precludes him from performing any gainful activity. We shall reverse the judgment of the district court and remand the case for further proceedings.
 
 
 2
 * Mr. Jones is a former "crib man" at a Ford Motor Company glass plant in Dearborn, Michigan. A crib man stands behind a counter and responds to requests from employees for various tools and parts. The weights of these items vary, but range from twenty-five to one hundred pounds. The crib man generally does not use a cart or dolly, but carries each tool or part by hand to the employee who is waiting at the counter. Mr. Jones was fifty-two years of age at the time he filed his application for benefits. He has an eighth grade education.
 
 
 3
 The earliest medical evidence before us is from 1983. In April of that year an x-ray showed a spur at the thoracolumbar junction, and an EMG showed evidence of bilateral S-1 radiculopathy in anterior and posterior myotomes. There was no evidence of neuropathy in the lower extremities. On May 4, 1983, Dr. A. Singal noted a "marked tenderness of the lower back in the lumbosacral area" with an accompanying paravertebral muscle spasm. Lumbosacral movements were "very difficult" to carry out because of "extreme pain." Reflexes were normal. Dr. Singal diagnosed Mr. Jones as having a lumbosacral sprain, radiculopathy, and a possible ruptured disc. Dr. Singal noted that Mr. Jones had a "history of [back] pain."
 
 
 4
 Dr. Singal referred Mr. Jones to Dr. B. Chang, who examined him on May 9, 1983. Dr. Chang reported that Mr. Jones said that the pain had been coming on since 1980 due to "continuous twisting and twitching activities at [his] job." Dr. Chang's diagnosis was that Mr. Jones had ruptured disc disease. Dr. Chang was certain of his diagnosis; the only question in his mind was whether the rupture was recent or whether Mr. Jones had suffered for a long time without seeking medical help.
 
 
 5
 A few days later Mr. Jones was referred to Dr. B.S. Bohra, who diagnosed a ruptured disc at approximately L-5/S-1. On May 17, 1983, a myelogram showed a ruptured disc at L-4/L-5. A laminectomy was apparently discussed, but the patient rejected the procedure because his weight put him in a high risk category. On August 26, 1983, Dr. Bohra made the same neurological findings as before, but the pain was so severe on that day that range of motion tests could not be done.
 
 
 6
 The agency's physician, Dr. L. Banerji, examined Mr. Jones on November 9, 1983. Mr. Jones was able to perform range of motion tests that day. Lateral flexion was five degrees (20 is normal); forward flexion was 20 degrees (90 is normal); hyperextension was ten degrees (30 is normal); rotation was five degrees (30 is normal). Dr. Banerji found that Mr. Jones had osteoarthritis of the lumbar spine, but found no evidence of nerve root compression.
 
 
 7
 Dr. Bohra examined Mr. Jones again on January 25, 1984, and did some range of motion tests. The forward flexion was now 40 degrees (with pain); hyperextension was 20 degrees (with pain); lateral flexion was 30 degrees (with pain); the rotation figure is illegible. In forms sent at various times to Ford Motor Company regarding disability/sick leave, Dr. Bohra advised that Mr. Jones "cannot sit for long periods, no standing, no lifting, no bending."
 
 
 8
 Mr. Jones was apparently sent by his attorney to Dr. Roger M. Morrell, who examined him on March 31, 1984. Dr. Morrell noted that Mr. Jones was obviously in "considerable pain." His gait was abnormal and stooped. This must have been another bad day for Mr. Jones: forward flexion was ten degrees; hyperextension was eight degrees; "extension" was three degrees; left lateral flexion was 30 degrees; right lateral flexion was 25 degrees; right rotation was 45 degrees; left rotation was 30 degrees. There were some instances of abnormality in sensory tests. Dr. Morrell advised surgery for a ruptured disc.
 
 II
 
 9
 Mr. Jones filed his application for Social Security benefits on August 23, 1983, claiming he had been disabled since April 19, 1983. The Social Security Administration denied his claim as an initial matter and on reconsideration. Two hearings were then held before an ALJ upon the request of Mr. Jones. Mr. Jones did not attend the first hearing, at which the vocational expert testified, but did attend and testify at the second hearing. The ALJ decided that Mr. Jones was not eligible for disability benefits. The Appeals Council declined to review the ALJ's decision as an initial matter, and later, after receipt of additional evidence, refused to disturb the ALJ's decision. Mr. Jones appealed to the district court, which referred the case to a United States Magistrate. The magistrate recommended that the agency decision be reversed pursuant to Mr. Jones' motion for summary judgment. The district court, having reviewed the record independently, declined to accept the magistrate's recommendation and affirmed the decision of the agency. A timely notice of appeal was then filed.
 
 
 10
 The ALJ, whose decision became the agency decision, attempted to make the sequential inquiry prescribed by the regulations. The ALJ found that Mr. Jones was not engaged in gainful activity (step one); that Mr. Jones "has a musculoskeletal impairment in his lumbosacral spine but that the impairment is not especially severe" (step two); that Mr. Jones does not meet the "listings" (step three); that Mr. Jones cannot return to his past work (step four); and that Mr. Jones has a residual functional capacity to perform some work (step five). The findings at step five require further explanation. Although the ALJ found that there are a number of jobs in the national economy Mr. Jones could perform, the ALJ also found that Mr. Jones was not capable of doing a job which required a great deal of bending or stooping. Although Mr. Jones was able to perform some jobs within the light work category, the ALJ concluded, his "exertional limitations do not allow him to perform the full range of light work." Thus the ALJ apparently found that the claimant's residual functional capacity falls somewhere between the sedentary and light work categories. In other words, being able to perform certain types of light work which do not require stooping or bending, Mr. Jones can perform work slightly more strenuous than sedentary work.
 
 
 11
 The importance of the distinction between sedentary and light work becomes apparent when one looks at the "grid," 20 C.F.R. Part 404, Subpart P, Appendix 2. When one puts a person with Mr. Jones' characteristics (closely approaching advanced age, limited or less education, skills not transferable) through the sedentary work grid, one finds that such a person must be classified as disabled. When one puts such a person through the light work grid, one finds that the person must be classified as not disabled.
 
 
 12
 Title 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(d) says that there will be cases in which a claimant's "residual functional capacity falls between the ranges of work indicated" in Appendix 2. In such cases, the decision is to be based upon "the principles and definitions in the regulations, giving consideration to the rules for specific case situations in this Appendix 2." 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(d). See also Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 3 (1st Cir.1982) ("[i]f the facts do not fit squarely within a rule [in the grid] because they reveal a borderline case or a case lying between two rules, those rules still 'provide guidance;' they are to be given 'consideration,' and they 'provide an overall structure for evaluation' "). The ALJ seems to have proceeded as if the "light work" section of the grid were controlling, which it clearly is not: both the light work and sedentary work rules are to be considered, but neither provides an automatic answer to the question whether Mr. Jones is disabled.
 
 
 13
 Neither does the ALJ seem to have focused adequately on the question whether the economy has a significant number of more-than-sedentary but less-than-light jobs that Mr. Jones could perform without a great deal of bending or stooping. The rules do not provide for the taking of administrative notice as to the number of unskilled jobs existing throughout the national economy for the individual whose abilities do not put him squarely within any defined functional level, and the record evidence on this point is less than satisfactory. The vocational expert testified that there were between 25,000 and 30,000 "light" jobs in the local economy, but the expert provided no information as to how many of these jobs could be done without bending or stooping. In fact, the expert testified that "[b]ending, at least from the waist forward over a desk, over a machine, over an assembly line, over a pail of trash, that is something that quite frankly is part and parcel of light work so that if in fact the person really can't bend very much, from a standing position, that might cause me to rethink whether or not it would be compatible to light work." There is thus no solid evidence that there are any jobs within the light work category that a person with Mr. Jones' infirmities could perform. The agency needs to make its findings more specific, and it may well conclude that it cannot do so without taking additional testimony from a vocational expert.
 
 
 14
 We REVERSE the judgment of the district court and REMAND this case for further agency proceedings not inconsistent with this opinion.