Patricia JOHNSON, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 87–0012–XX.

United States District Court, D. Massachusetts.

Oct. 28, 1988.

---

David R. Patterson, Shrewsbury, Mass., for plaintiff.

Peter E. Gelhaar, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is an action under Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. secs. 405(g) and 1383(c)(3), to review a final decision of the Secretary of Health and Human Services denying the application of the plaintiff, Patricia Johnson ("Johnson"), for disability benefits.

## I.  BACKGROUND

Johnson, born March 30, 1941, is a forty-seven year old woman who lives with her mother in Worcester, Massachusetts. (Tr. 34, 55, 57) She completed the eleventh grade but did not graduate from high school. (Tr. 34–35) After leaving school, Johnson worked at various factory jobs such as spray painter, brush and lamp assembler, and machine operator. (Tr. 47–48, 124–126)

In December, 1979, while employed as an inspector in the NECCO candy factory, Johnson suffered elbow, neck and back injuries in a motor vehicle accident. After the accident, Johnson was able to return to her employment at NECCO. That employment included testing, inspecting, lifting and weighing thirty pound bags of candy. (Tr. 44, 123) The job also required constant walking and bending. (Tr. 49, 123)

In October, 1980, Johnson left her job with NECCO. (Tr. 49) On Christmas Eve, 1980, Johnson was the passenger in a taxicab which, while stopped at a red light, was struck in the rear by another vehicle.

Johnson suffered a concussion and injured her neck. (Tr. 37) Johnson went to Worcester City Hospital where she was treated on an out-patient basis. (Tr. 37, 137) Doctors there noted that she was suffering from light-headedness and vomiting. (Tr. 137) X–rays indicated a loss of cervical lordosis possibly due to muscular spasm. (Tr. 138) The diagnosis was neck sprain; Johnson was discharged with a cervical collar and a prescription for Flexeril, a pain killer. (Tr. 137) Johnson asserts that in the days following her discharge she was in considerable pain and discomfort. She suffered pain in her neck, head, back, elbow, and chest. For five days she was confined to her bed; for a week and a half she was confined to her house. (Tr. 38)

Over the course of the next year, Johnson asserts that the pain became worse. (Tr. 38) Johnson contends that she had difficulty getting out of bed and suffered "awful" headaches, depression, and pain in her neck, shoulders and back. (Tr. 38) The pain was constant and sharp. (Tr. 39) Eventually, Johnson sought medical attention from Dr. Roland R. Caron, an orthopedic surgeon. (Tr. 39) Dr. Caron prescribed various pain killers, which seemed to improve Johnson's condition. (Tr. 143–46)

In November, 1984, Johnson returned to work as a janitor and housekeeper. (Tr. 35–36, 45, 127) Her job duties included mopping, dusting, vacuuming, emptying waste baskets, cleaning the men's room and washing windows. (Tr. 45) Johnson was scheduled to work four hours per day, five days per week (Tr. 46, 127), but asserts that she was frequently absent due to her neck pain, sometimes missing two or three days of work each week and sometimes leaving work early. (Tr. 47, 128) Even when present for work, Johnson states that she could not perform the full range of her job duties. (Tr. 46) Her employer, she contends, would provide assistance for her, although it was not the employer's practice to provide such assistance. (Tr. 46, 128) Many of the job duties Ms. Johnson was required to perform such as mopping,

washing windows, and vacuuming, caused her neck pain. (Tr. 48) Johnson left the job in June of 1985 and has not worked since that time. (Tr. 111)

On September 10, 1985, Johnson applied for Supplemental Security Income benefits with the Social Security Administration. (Tr. 55–64) On November 27, 1985, she was notified that her application had been denied. (Tr. 74) On December 6, 1985, she sought reconsideration of that determination, which request was also denied. (Tr. 86) Johnson then requested and, on June 27, 1986, received a hearing before an Administrative Law Judge. The Administrative Law Judge denied her claim, finding that she "ha[d] the residual functional capacity to perform the full range of sedentary work." (Tr. 22) On April 22, 1987, the Appeals Council upheld the denial, conceding, unlike the Administrative Law Judge, that Johnson had a nonexertional limitation but finding that she nevertheless "still retain[ed] the ability to perform a significant number of sedentary jobs." (Tr. 8) Johnson then brought the instant action.

## II. DISCUSSION

A district court reviewing a decision of the Secretary must determine whether the decision is supported by substantial evidence and conforms to statutory requirements. *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 319 (1st Cir.1981). The relevant statute defines a disabled individual as one who is unable:

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

42 U.S.C. sec. 423(d)(1)(A) (1982). Section 423(d)(2)(A) further provides that an individual:

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

42 U.S.C. sec. 423(d)(2)(A).

The Secretary has promulgated regulations that employ a series of tests to determine whether a claimant is disabled. 20 C.F.R. sec. 404.1520 (1985). *See Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6 (1st Cir.1982). In particular, the Social Security Administration asks five questions in the following order:

First, is the claimant currently employed? If so, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment which "significantly limits her physical or mental capacity to perform basic work-related functions." 20 C.F.R. sec. 404.1521 (1985).[1] If the claimant does not have a severe impairment, the claimant is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to one specifically listed in the regulations' Appendix 1? If so, the claimant is automatically considered disabled.

These first three tests are threshold "medical" tests. If the claimant is found to have a severe impairment (test 2) but that impairment is not equivalent to one listed in Appendix 1 (test 3), the agency

---

1. In *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), Mr. Justice Powell, writing for a majority of the Court, upheld the regulation, in part, because it served the valid administrative goal of "identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into ac- count." *Id.* 108 S.Ct. at 2297. Three justices dissented. Concurring—and thus lending the necessary votes for what is the majority view— Madame Justice O'Connor and Mr. Justice Stevens explained that the step two severity regulation is to be narrowly construed as set forth in Social Security Ruling 85–28. *Accord McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118 (1st Cir.1986).

goes on to the fourth and fifth questions, which apply "vocational" tests.

Fourth, does the claimant's impairment prevent her from performing work of the sort she has done in the past? If not, she is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent her from performing other work of the sort found in the economy? If so, she is disabled; if not, she is not disabled. *Goodermote*, 690 F.2d at 6–7.

In applying these last two "vocational" tests, the claimant has the burden of proving that she is disabled under the fourth test; that is, she must prove that her disability is serious enough to prevent her from working at her former job. However, the Secretary bears the burden of showing that the claimant has not satisfied the fifth test; that is, the Secretary must show the existence of other jobs in the national economy that the claimant's impairment does not prevent her from performing. *Id.* at 7.

## III. THE INSTANT CLAIM

Because the Secretary concedes that Johnson can no longer perform her past work (Tr. 9), the relevant inquiry in this case focuses on this fifth test: specifically, the Court must consider whether the record contains substantial evidence establishing that the Secretary has satisfied his burden of proving that, given Johnson's residual strength capabilities, age, education, and work experience, she is capable of performing sedentary work found in the national economy. *See Geoffroy*, 663 F.2d at 317, 319; 20 C.F.R. Part 404, Subpart P, Appendix 2, sec. 200.00(e)(2).

### A. *Nonexertional Limitations.*

In denying Johnson benefits, the Appeals Council found that she had a nonexertional postural limitation, *viz.*, the inability to perform work that requires her "to look downward for extended periods of time." (Tr. 7,

8) Because "[t]he Council believes that most sedentary jobs do not force individuals to work with their heads down for extended periods," it found that although "the claimant's neck impairment does significantly reduce her functional capabilities, she still retains the ability to perform a significant number of sedentary jobs." (Tr. 8)

▉ Johnson attacks the Appeals Council's action on two fronts. First, she argues that uncontroverted evidence in the record establishes that her nonexertional limitation is broader than that found by the Council. Specifically, Dr. Caron stated that Johnson could not perform frequent bending (Tr. 148, 152) and both Dr. Caron and the Secretary's consulting physician, Dr. Herbert Rubin, concluded that Johnson suffers a substantial reduction in the range of motion of her neck, forward, backward, right, or left. (Tr. 146, 148, 155, 158) The Appeals Council, however, relied on the most recent assessment then available, made by Dr. Caron, who opined that as of July 9, 1986, the only restriction on Johnson's ability to work was that she could not do so in a position that required her to look down for 30 to 45 minutes at a time. (Tr. 168) Dr. Caron did not mention any restriction on her ability to bend or otherwise move her neck. (*Id.*) Although the Court might well have resolved this issue differently were this a *de novo* review, the Court holds that there is substantial evidence in the record for the Appeals Council's finding that Johnson's only nonexertional limitation is an inability to look downward for more than 30 to 45 minutes.[2]

Johnson's second attack—that the Secretary's failure to take expert testimony with respect to the effect of her nonexertional limitation—is more telling. The law is clear that individuals with significant nonexertional limitations are to be treated differently from claimants without such limi-

---

2. Strictly speaking, the Appeals Council used the term "extended periods of time." Because the Appeals Council clearly relied on the evidence of Dr. Caron to make this finding, and has cited no evidence in this record—nor has the Court found any—to justify the use of the vague phrase "extended periods of time," the Court holds that "30 to 45 minutes" is the relevant amount of time.

tations. Under the regulations, "nonexertional impairment" is described as follows:

> Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, *some impairments may result solely in postural and manipulative limitations* or environmental restrictions.

20 C.F.R. Part 404, Subpart P, Appendix 2, sec. 200.00(e) (1988) (emphasis supplied).

Where an individual suffers from such a nonexertional postural limitation, the Secretary's regulations require the following procedure:

> (1) In the evaluation of disability where the individual has solely a nonexertional type of impairment, determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in this Appendix 2. The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments.

> (2) ... [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R. Part 404, Subpart P, Appendix 2, sec. 200.00(e) (1988).

■ In the instant case, following the analysis of *Lugo v. Secretary of Health and Human Services*, 794 F.2d 14, 17 (1st Cir.1986), a preliminary question arises: does Johnson's postural impairment significantly affect her ability to perform the full range of sedentary jobs? This Court does not hold that a nonexertional impairment can never be *de minimus* in this respect.[3] In this case, however, it is by no means apparent that the nonexertional postural limitation from which the Secretary admits Johnson suffers had an insignificant effect on the type of work Johnson can perform, as the Appeals Council blithely stated.[4]

---

3. Indeed, *Lugo* appears to contemplate such a case, directing the district court on remand to consider whether the claimant's nonexertional limitations significantly affected the claimant's ability to perform the full range of jobs requiring medium or lesser work "with the aid of additional evidence *if necessary.*" *Lugo*, 794 F.2d at 17 (emphasis supplied).

4. Comparing the instant case with *Torres v. Secretary of Health and Human Services*, 668 F.2d 67 (1st Cir.1981) is instructive. There, the First Circuit upheld a decision by an administrative law judge who had found that the claimant's nonexertional limitation did not significantly affect his ability to do light work because such a finding was supported by substantial evidence. *Id.* at 69. Here, there is no evidence whatsoever in the record to support the Appeals Council's finding that numerous sedentary jobs exist that can accommodate Johnson's nonexertional limitation. Indeed, the Appeals Council improperly "assumed the role of vocational expert [it]self," *Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir.1988), an action reviewing courts cannot countenance. *See Burkhart*, at 1341 (remand-ing and requiring the Secretary to take the testimony of a vocational witness).

*Borrero Lebron v. Secretary of Health and Human Services*, 747 F.2d 818 (1st Cir.1984), relied on by the Secretary, is inapposite. There, the First Circuit held that application of the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid"), was proper for individuals whose only alleged nonexertional limitation was " 'low-level personality and emotional disorders that undoubtedly afflict—at least from time to time—vast numbers of the populace.' " *Id.* at 820 (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir.1984). There, the First Circuit was confronted with a limitation whose impact on work capability was more easily judged by non-vocational experts— and judged to be *de mimimus*, 747 F.2d at 820—than the postural limitation in the instant case. Moreover, the First Circuit considered the limitation so wide-spread that forbidding the use of the Grid where it was present would greatly restrict the Secretary's ability to use the Grid with an attendant substantial increase in cost.

(Tr. 9) The Appeals Council's assertion that it "believes that most sedentary jobs do not force individuals to work with their heads down for extended periods" (Tr. 8) is conclusory and without foundation in the record. The Court therefore holds that, as matter of law, the nonexertional postural limitation of the claimant is on its face serious enough to require that additional evidence from a vocational expert be taken [5] to determine whether such a limitation significantly affects Johnson's ability to perform the full range of sedentary jobs and, if so, whether there are other sedentary jobs in the national economy which Johnson can perform. *See, e.g., Lugo,* 794 F.2d at 16–17; *Gagnon,* 666 F.2d at 665–66.[6] The Secretary erred in failing to take the testimony of a vocational expert, instead relying on his own unsubstantiated belief and the "framework" of the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (1988) (the "Grid"). (Tr. 7, 9) [7]

### B. *The Evaluation of the Claimant's Pain.*

■ Johnson also contends that the Secretary erred in his evaluation of her claim of disability based on pain. On this point, the Appeals Council held:

> The claimant's subjective allegations, including pain, are not supported by, or consistent with, the evidence of record. The Appeals Council particularly notes the treating orthopedist's opinion that the claimant can perform sedentary work not involving looking down for extended periods of time. These functional limitations do not preclude all substantial gainful activity.

(Tr. 9) Indeed, Dr. Caron stated numerous times in Johnson's medical records that he believed that she was capable of working.

5. As the First Circuit observed in *Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662 (1st Cir.1981), "[w]here the Tables of [the Grid] do not apply in a given case, it is likely that the testimony of a vocational expert will typically be required...." 666 F.2d at 666 n. 9.

6. The Court is further troubled by the ambiguity in the Appeals Council's decision regarding its findings as to various time periods within the nearly eight-year period for which Johnson is now seeking benefits. Although the Court is not ruling that on remand the Secretary must adopt these categories, it observes that the eight-year time period may be broken down into at least four sub-periods: 1) the first year after the accident in which Johnson was not being seen by a doctor and during which she asserts she was in severe pain; 2) the three-year period, approximately December, 1981 to October, 1984, during which Johnson came under the care of Dr. Caron; 3) the nine-month period, October, 1984 to June, 1985, when Johnson worked as a housekeeper, and 4) the over three-year period, June, 1985 to the present, after Johnson left that job.

The Appeals Council's finding that the claimant last engaged in substantial gainful employment in June, 1985, may signify that the Council believes that prior to that time Johnson was not disabled based primarily on her ability to work during that nine-month period. Admittedly, because of its decision that Johnson's nonexertional limitations did not prevent her from performing a wide range of sedentary jobs, the Appeals Council did not need to focus on the relevant time periods. However, if on remand the additional evidence required by this decision reveals that Johnson cannot perform even sedentary work, the Secretary will need to make further findings as to how far back in the eight-year period she became disabled.

7. To hold otherwise comes dangerously close to permitting the Secretary to apply the Grid mechanically even to claimants with nonexertional impairments that significantly affect their ability to perform the full range of jobs, jobs which *rote application of the Grid otherwise indicates* they are capable. The First Circuit has ruled repeatedly that, in such circumstances, the Grid is not dispositive, and that the Secretary is not permitted to use the Grid to direct a finding that such claimants are not disabled. *E.g., Lugo v. Secretary of Health and Human Services,* 794 F.2d 14, 17 (1st Cir.1986); *see also Burgos Lopez v. Secretary of Health and Human Services,* 747 F.2d 37, 41 (1st Cir.1984); *Gagnon,* 666 F.2d at 665–66. The court in *Vazquez v. Secretary of Health and Human Services,* 683 F.2d 1 (1st Cir.1982) observed, "If the facts do not fit squarely within a rule because they reveal a borderline case or a case lying between two rules, those rules still 'provide guidance;' they are to be given 'consideration,' and they 'provide an overall structure for evaluation.' *If, instead, the facts do not fit squarely within a rule because the claimant has a combination of impairments—particularly if the claimant has a nonexertional impairment—the guidelines suggest still more individualized consideration."* 683 F.2d at 3 (citations omitted) (emphasis supplied). Such individualized consideration, based on competent evidence in the record, not on the belief of the Secretary, is required in the present case.

For example, on June 4, 1982, he wrote on her chart, "If she can find some work which would not be too strenuous for her neck I advised her to come and we will give her a note." (Tr. 143) In September, 1983, Dr. Caron advised Johnson that "she can start looking for light work." (Tr. 152) In January and July of 1986, Dr. Caron wrote that Johnson could perform some sedentary work as defined by the Social Security Administration provided that she not be required to look downward for prolonged periods of time or to perform heavy lifting or bending. (Tr. 148, 168) Only in October, 1986, shortly after the Administrative Law Judge's adverse ruling, did Caron express the belief that Johnson was completely disabled. (Tr. 174)

The Court is satisfied that this body of evidence is substantial enough to support the Secretary's conclusion that the pain Johnson alleges she suffers is not disabling, and that she has not been precluded from all substantial gainful activity from June 4, 1982 to the present. The Secretary was reasonable in inferring from the opinion of Johnson's treating physician that she had the ability to work and that her pain was not as substantial as she claims. Further, the Administrative Law Judge also found that Johnson's activities—specifically, the job she held in 1984–85—were inconsistent with the level of pain and attendant disability she claims. The Court agrees that this conclusion is supported by substantial evidence with respect to the time period from January to June, 1985.[8]

Johnson argues that the statement of Dr. Caron should be discounted because his opinions as to whether or not she can work are outside his area of expertise in that he is not a vocational expert. However, it is well-settled that the opinion of a treating physician is probative, albeit not controlling, on the issue of whether a claimant retains the capacity to work. *See, e.g., Sitar v. Schweiker,* 671 F.2d 19, 22 (1st Cir.1982). Moreover, it is entirely logical and permissible for the Secretary to infer from such statements that the level of pain experienced by Johnson is less than that claimed and is not disabling.

Johnson also argues that if the opinion of Dr. Caron is probative with respect to the disability issue, Dr. Caron's October 27, 1986 letter to Johnson's attorney in which he finally concluded that Johnson is disabled should carry considerable weight. Again, Dr. Caron's opinion is not controlling. *See, e.g., Sitar,* 671 F.2d at 22; 20 C.F.R. sec. 404.1527 (1988). Furthermore, its cursory, if not conclusory, nature substantially reduces its value.

The Secretary is "free to take account of the amount, and nature, of underlying clini-

---

8. As such, the Court holds that the Secretary's decision, to the extent he found that Johnson was not disabled, either from pain or from a nonexertional postural limitation from January 1, 1984 to June 24, 1985, need not be revisited on remand. Johnson contends that her work during this time period does not constitute significant gainful activity because, she alleges, she was frequently absent from work and received special assistance to enable her to perform her job. (Tr. 45–47) The Appeals Council found that she averaged over $300.00 per month in earnings in the first six months worked in 1985, thus satisfying the applicable regulation concerning significant gainful activity for those months, *see* 20 C.F.R. sec. 404.1574(b)(2)(vi), although not for the three months worked in 1984. (Tr. 8; *see* Tr. 104) Although not conclusive, this record of earnings creates the presumption that Johnson was engaged in substantial gainful activity during these six months. *See, e.g., Downie v. Heckler,* 628 F.Supp. 963, 965 (D.Mass.1986).

Johnson seeks to rebut the presumption through her assertions that she was unable to perform her job without special assistance. Johnson is correct in asserting that, should the Secretary find this to be the case, her employment under these terms would not constitute significant gainful activity. *See* 20 C.F.R. sec. 404.1573(b). The Appeals Council dismissed Johnson's assertions because she failed to submit any evidence from her employer to substantiate her claims of frequent absences and special assistance. (Tr. 8) This Court is troubled by the thinness of the record on this point. Certainly, in the future, it would be preferable for the Administrative Law Judge to keep the record open for a short period of time after the hearing, requesting that the claimant in that time period submit attendance records and perhaps an affidavit or letter from her supervisor substantiating her claims. Nevertheless, the Secretary was justified in refusing to credit Johnson's testimony and determining that the presumption that she had performed substantial gainful activity had not been successfully rebutted.

cal support ... in determining the weight to give to statements of [treating physicians] declaring plaintiff to be disabled." *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 223 n. 9 (1st Cir.1981); 20 C.F.R. sec. 404.1526(b) (1988) ("Any medical findings in the evidence must be·supported by medically acceptable clinical and laboratory diagnostic techniques"). Here, Dr. Caron's two paragraph letter asserts that Johnson is disabled because of chronic headaches, "neck problems," and "radiculopathy[9] down the right arm." (Tr. 174) However, as the Appeals Council correctly observed, Dr. Caron failed to submit any clinical findings to substantiate his conclusions. (Tr. 7) Moreover, as to the three medical conditions that underlie his opinion, Dr. Caron admits that Johnson's chronic headaches "are relieved by some anti-inflammatory medication." (Tr. 174) Dr. Caron gives no indication if Johnson's neck problems were any worse, apparently save for evidence of radiculopathy, at the time of the letter than they had been months and years previously when he had found Johnson not disabled. As the Appeals Council noted, however, numerous previous examinations of Johnson had failed to reveal any evidence of this disease (Tr. 7, Tr. 143–50, 154–56, 157–60, 168–69), nor did Dr. Caron provide any indication why in October, 1986 he suddenly considered this disease to be present. Considering the evidence as a whole, the Secretary was justified in finding Johnson not disabled as of October 27, 1986.

The question whether Johnson's pain was disabling prior to June 4, 1982 remains. The Court finds that the reasons cited by the Appeals Council for discounting Johnson's assertions have little bearing on this time period. Johnson's ability to work in 1984–85, and the opinion of her treating physician that from June, 1982 to 1986 she was capable of working, shed little light on whether or not she was disabled by pain in the year and one-half after her accident in December, 1980, especially given that for most of that period, she was not being treated by Dr. Caron or anyone else for her pain.

Indeed, the evidence at hand, albeit primarily Johnson's own uncorroborated testimony, suggests that she was in excruciating pain during the first year after the accident: "Some mornings I couldn't get up. I had to hold my head to get my head up off the pillow. Awful headaches, depression, pain in my neck and shoulder, my back." (Tr. 38) The pain was constant and sharp, and grew worse until she sought medical help from Dr. Caron slightly more than one year after the accident. (Tr. 38–39) It seems reasonable that it may have taken several months until Dr. Caron was able to control Johnson's pain through medication so as to render her no longer disabled. This Court does not, of course, hold as matter of law that on remand the Secretary must find Johnson disabled by pain for the period December 24, 1980 to June 4, 1982. However, because there is a medically determinable impairment linked to the pain—i.e., "degenerative disc disease with spurring and narrowing at C5–C6" (Tr. 143) —Johnson's complaints of pain must be considered and evaluated. *See, e.g., Winn v. Heckler*, 762 F.2d 180, 182 (1st Cir.1985). As is always his burden, the Secretary must articulate reasons based on substantial evidence in the record for finding Johnson not disabled if that is his determination on remand. This he has not done to date.[10]

---

**9.** Radiculopathy is defined as "[d]isease of the roots of spinal nerves." *Blakiston's Gould Medical Dictionary* 1148 (4th ed. 1979).

**10.** In addition, with respect to pain, this Court notes that even should the Secretary on remand determine that Johnson was at no time disabled due to pain, that pain must be evaluated as a nonexertional limit. *See Gagnon*, 666 F.2d at 666 n. 8 (stating that "[p]ain may be a nonexertional factor to be considered in combination with exertional limitations as well as a separate and independent ground for disability"). De-

pending on the Secretary's finding, any level of pain that Johnson has may merely be redundant with respect to her postural limitations. For example, her neck pain may only hinder her ability to work by preventing her from looking downward for extended periods of time. On the other hand, in addition to specific postural limitations, Johnson may be found to suffer a significant level of constant pain that, while not disabling, is significant enough to be considered a nonexertional limitation. *See id.* (observing that a lesser amount of pain is required to

## IV. CONCLUSION

Accordingly, it is hereby ordered that the decision of the Secretary be VACATED and the case REMANDED to the Secretary for further proceedings in accordance herewith. Specifically, the Secretary is directed 1) to take testimony from a vocational expert with respect to the types of jobs Johnson can hold in spite of her nonexertional postural limitation; 2) to determine whether Johnson was disabled due to pain during the period December 24, 1980 through June 4, 1982; and 3) to determine whether the pain Johnson asserts she has and is suffering, if not disabling, constitutes a nonexertional limitation and, if so, to what extent it limits the type of work she can perform.[11]

establish a nonexertional limitation than is required to establish disability).

**11.** Again, the Secretary need not reconsider the period from January 1, 1985 to June 24, 1985 for which his finding of not disabled still stands. *See supra* note 8.