Hannaford v. SSA                    CV-98-691-M    12/03/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Michael J. Hannaford,
     Claimant

     v.                                    Civil No. 98-691-M

Kenneth S. Apfel, Commissioner,
Social Security Administration
     Defendant


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), claimant, Michael Hannaford, moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). He says the Administrative Law Judge failed to properly consider the disabling nature of his exertional and non-exertional limitations before concluding that he was not disabled within the meaning of the Act. Defendant objects and moves for an order affirming the decision of the Commissioner.


**Factual Background**

I.   Procedural History.

On January 25, 1995, claimant filed an application for disability insurance benefits under Title II of the Act, alleging that he had been unable to work since February 1, 1990, due to a back condition, asthma, and an anxiety disorder. His application was denied initially and on reconsideration. An administrative law judge then considered claimant's application and, on January

26, 1996, concluded that claimant was not disabled. After considering additional evidence submitted on June 21, 1996, the Appeals Council denied claimant's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Claimant then sought judicial review of the ALJ's decision in this court. By order dated July 31, 1997, this court (DiClerico, J.) remanded the case for additional development of the administrative record relative to claimant's allegations of pain and, if appropriate, consultation with a vocational expert. Accordingly, the Appeals Council vacated the ALJ's earlier decision and remanded the case.

On March 16, 1998, claimant, his attorney, and a vocational expert appeared before an Administrative Law Judge, who considered claimant's application de novo. On May 16, 1998, the ALJ issued his order, concluding that although claimant was unable to return to his former employment on the date his insured status expired, "he was able to make an adjustment to other work which exists in significant numbers in the national economy." Transcript at 431. Accordingly, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, at any time through the expiration of his insured status.

Claimant then sought review of the ALJ's decision by the Appeals Council. On October 16, 1998, however, the Appeals

Council denied his request, thereby rendering the ALJ's decision a final decision of the Commissioner, subject to judicial review. On December 17, 1998, claimant filed an action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 4).  The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 6).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 5), need not be recounted in this opinion.

**Standard of Review**

I.  <u>Properly Supported Findings by the ALJ are</u>
    <u>Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Irlanda Ortiz v. Secretary of</u>

3

<u>Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1]

Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the claimant's position. <u>See</u> <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). <u>See also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); <u>Tsarelka v. Secretary of Health & Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. <u>See</u> <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)). It

---

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

4

is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary

5

of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

6

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520. See also 20 C.F.R. § 416.902. Ultimately, a claimant is disabled only if his:

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I. Background - The ALJ's Findings.

In concluding that Mr. Hannaford was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R.

7

§ 404.1520. Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since February 1, 1990. Next, he concluded that claimant "has [a] back condition, asthma, and [an] anxiety disorder, impairments which cause significant vocationally relevant limitations." Transcript at 432. Nevertheless, the ALJ determined that "claimant has no impairment which meets the criteria of any of the listed impairments." Transcript at 435.

The ALJ next concluded that plaintiff retained the residual functional capacity ("RFC") to perform the exertional demands of sedentary work.[2] He noted, however, that claimant's RFC was limited by the following non-exertional factors: (a) his inability to be exposed to chemical agents and excessive amounts of dust; (b) his inability to work at heights or around machinery; (c) his ability to function only at jobs that involved no more than a low level of stress; and (d) his need to alternate between a seated and standing position. Transcript at 437, 440.

---

2    "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

In light of those restrictions, the ALJ concluded that claimant was not capable of returning to his prior job. Transcript at 438.

Next, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying upon the testimony of a vocational expert as well as his own review of the medical record, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, he "retained the capacity to make an adjustment to work which exists in significant numbers in the national economy." Transcript at 439. Consequently, the ALJ determined that claimant was not "disabled," as that term is defined in the Act, on the date his insured status expired.

II. Claimant's Exertional and Non-Exertional Limitations.

The sole issue claimant raises on appeal is his allegation that the ALJ failed to properly consider the combined effect of his non-exertional and exertional impairments.

> During the hearing the ALJ did not consider the combined effects of all three impairments (asthma, bad back, and anxiety disorder), after determining that the exertional impairments alone did not qualify as a disability. Although the ALJ did determine that Mr. Hannaford's back condition, asthma, and anxiety disorder cause significant impairments on his vocational[ly] relevant limitations, the ALJ did not consider all of the nonexertional impairments in conjunction with his exertional limitations after a determination on exertional impairments.

9

Claimant's memorandum at 5 (citation omitted).  The court disagrees.

First, in assessing the extent to which claimant's non-exertional limitations restricted his ability to perform the requirements of sedentary work, the ALJ assessed the credibility of claimant's subjective complaints of pain and disability.  He concluded that those complaints were overstated and not entirely credible.  Among other things, the ALJ pointed to the following factors in support of that conclusion.

> Contrary to the claimant's testimony, the medical record has documented a variety of daily activities, including coaching a local baseball team, house painting, and playing darts at a local tavern.  He has also reported partaking in activities such as fishing and bowling, as well as helping his wife around the kitchen and with vacuuming.  I must also point to repeated references of noncompliance with treatment, as well as reported symptom exaggeration and acknowledged abuse of medications.  In fact, in a recent progress note, Dr. Snider has commented specifically that "I feel that our relationship has become less than therapeutic.  Over the years he has exhibited drug-seeking behavior and has not cooperated with multiple treatment recommendations. . . ."  More generally, Dr. Snider has suggested explicitly that neither [claimant's] back condition nor asthma would preclude his ability to perform "a relatively sedentary job."  Dr. Snider's assessment is consistent with both the claimant's conservative treatment history and objective test results that show no evidence of neurologic dysfunction, contrary to the claimant's new complaints of radiculopathy.  Moreover, in spite of the claimant's questionable compliance with treatment, medical records indicate the claimant's symptoms have still responded quickly to use of medication and other conservative modalities, allowing his return to baseline.

Transcript at 437 (citations omitted).[3]

In addition to the documented occasions on which claimant failed to comply with physician-recommended treatment protocols, missed numerous medical appointments, neglected to attend rehabilitative counseling sessions, over-dramatized the extent of his discomfort, and abused some of his medications, his credibility was further undermined by the fact that he continued to smoke approximately a pack of cigarettes a day, notwithstanding the claim that his asthma had a profoundly disabling effect on him (e.g., causing seizures, loss of

---

3     The record does contain a copy of a letter sent by Dr. Snider to claimant on July 3, 1996.  Transcript at 711.  In it, Dr. Snider apologized to claimant for having accused him of abusing two of the prescription medications which he was taking. She did, however, point out that claimant was taking another one of his prescription medications at twice the prescribed dose and represented that she planned to implement certain measures to preclude him from doing so in the future.  See also Transcript at 166 (patient notes written by Dr. Snider describing claimant's pattern of "accelerating use" of prescription medications and referencing an occasion on which claimant presented an altered prescription to the pharmacy (i.e., for 30 tabs, rather than the prescribed 3)).

At the hearing, claimant acknowledged that Dr. Snider had confronted him about his apparent abuse of several pain medications.  He added, however, that she had subsequently apologized for having made that accusation.  In light of that testimony, it is worth noting that Dr. Snider's patient progress note dated March 6, 1998 (transcript at 801), which was completed nearly two years after the July, 1996 "apology" letter, again references claimant's "drug-seeking behavior" and failure to follow prescribed treatments.  Thus, contrary to the suggestion implicit in claimant's testimony, drug abuse and failure to follow prescribed treatments appears to have been an on-going and recurrent problem - one that was not resolved at or near the date on which Dr. Snider wrote the apology letter in July of 1996, and one which apparently lingered into at least 1998.

consciousness, and requiring the use of a CPAP machine at night to assist his breathing).

At the hearing, the ALJ asked the vocational expert whether there were jobs in significant numbers in the national economy for a person capable of performing the exertional requirements of sedentary work (with the need to alternate between sitting and standing) and who is further limited:

> to less than a full range of sedentary [work], in that, he must not be exposed to chemical agents, or . . . unusual amounts of dust. He . . . couldn't, because of some indication of a seizure disorder, he cannot work at heights, [or] at work that requires balancing or [being] around machinery. He's additionally limited [to] . . . only low stress jobs.

Transcript at 505. Based upon that hypothetical, the vocational expert opined that there are many jobs in the national economy that such an individual could perform. Specifically, she concluded that such an individual could act as a sedentary cashier (approximately 385,000 positions nationally), an information clerk in a mall (approximately 67,500 positions nationally), an assembler of small products in clean environments (approximately 103,000 positions nationally), and a production inspector in a clean environment (approximately 25,000 positions nationally).

Upon examination by claimant's counsel, the vocational expert made clear that the jobs which she had identified: (a)

12

allowed an individual to alternate between sitting and standing; (b) did not involve "stressful situations"; (c) provided a clean environment, free of chemicals and dust; (d) did not involve any lifting over ten pounds; and (e) did not require the worker to "hunch over" a work-space, and did not involve any other postures or movements which might exacerbate a painful back condition. Claimant's counsel did not add any qualifications to the hypothetical posed by the ALJ nor did he otherwise undermine the vocational expert's ultimate conclusions regarding the occupations in which a person with claimant's condition might work.

Based upon the exertional and non-exertional limitations from which he concluded claimant suffered and based upon the testimony of the vocational expert, the ALJ concluded that there is a substantial number of jobs in the national economy that claimant is capable of performing. And, as required by the pertinent Social Security Ruling, the ALJ specifically identified some of those jobs. Transcript at 441. See also Social Security Ruling 96-9p, Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, 1996 WL 374185 (July 2, 1996) ("Where there is more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the

13

individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country.").

## Conclusion

Having carefully reviewed the administrative record (including the testimony of the vocational expert) and the arguments advanced by both the Commissioner and claimant, the court concludes that the there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the expiration of his insured status. Both the ALJ's credibility determination and his conclusion regarding the availability of jobs in the national economy that claimant can perform are well-reasoned and well-supported by substantial documentary evidence.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 4) is denied, and the Commissioner's motion to affirm his decision (document no. 6) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 3, 1999

cc:  James W. Craig, Esq.
     David L. Broderick, Esq.

14