Robidas v. SSA                    CV-98-149-M    01/12/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Roger W. Robidas,
      Claimant,

v.                                          Civil No. 98-149-M

Kenneth S. Apfel, Commissioner
Social Security Administration,
      Defendant.


                          **O R D E R**

     Pursuant to 42 U.S.C. § 405(g), claimant, Roger Robidas,

moves to reverse the Commissioner's decision denying his

application for Social Security Disability Insurance Benefits

under Title II of the Social Security Act, 42 U.S.C. § 423 (the

"Act").  He asserts that the Administrative Law Judge erred: (a)

by concluding that claimant's impairment did not meet the

criteria of any impairments listed in the pertinent regulations;

and (b) by failing to solicit testimony from a vocational expert

to assist him in determining whether there were jobs in the

national economy which claimant was capable of performing.  The

Commissioner objects and moves for an order affirming his

determination that claimant was not disabled on or before his

date last insured.



                    **Factual Background**

I.    Procedural History.

     On August 27, 1996, claimant filed an application for

disability insurance benefits under Title II of the Act, alleging

that he had been unable to work since January 15, 1987. Claimant last met the disability status requirements on December 31, 1992 – his "date last insured". The Social Security Administration denied his application initially and on reconsideration. On March 28, 1997, claimant and his attorney appeared before an Administrative Law Judge, who considered claimant's application de novo. On May 14, 1997, the ALJ issued his order, concluding that "on the date his insured status expired, Mr. Robidas retained the capacity to make an adjustment to work which exists in significant numbers in the national economy." Administrative transcript at 38. Accordingly, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, at any time through the expiration of his insured status.

Claimant then sought review of the ALJ's decision by the Appeals Council. On January 16, 1998, the Appeals Council denied his request, thereby rendering the ALJ's decision a final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act. Claimant then filed a "Motion for Order Reversing the Decision of the [Commissioner]" (document no. 5). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 7).

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 6), need not be recounted here.

**Standard of Review**

I. Properly Supported Findings by the ALJ are
   Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may be substantial evidence supporting the claimant's position. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and

_____

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

3

evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). See also Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he

can perform.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals a listed impairment;

(4)  whether the impairment prevents the claimant from performing past relevant work; and

(5)  whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse the decision of the Commissioner and the Commissioner's motion to affirm his decision.

## Discussion

I.   Background - The ALJ's Findings.

In concluding that Mr. Robidas was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  First, he determined that claimant had not engaged in any substantial gainful activity since January 15, 1987. Administrative transcript at 32.  He then concluded that claimant suffered from a severe impairment: "degenerative disc disease, an impairment which has caused significant vocationally relevant limitations."  Id.

At step three of the sequential evaluation, the ALJ concluded that despite the severe nature of claimant's impairment, it did not meet the criteria of any of the impairments listed in Appendix 1 of the pertinent regulations (20 C.F.R., Part 404, Subpart P, Appendix 1).  Id.  Continuing to step four, the ALJ next determined that, based upon several factors, including claimant's subjective allegations of pain, his use of medications, daily activities, and his history of both medical and non-medical treatment, claimant retained the residual functional capacity ("RFC") to "perform the exertional demands of

7

sedentary work" as of his date last insured. Id., at 35.[2] He also concluded that claimant suffered from no significant non-exertional limitations which might otherwise narrow the occupational base of jobs which claimant might perform. Id.

Finally, based upon the record before him, and in light of his predicate factual findings, the ALJ applied the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpt. P, App. 2 (also known as the "Grid") and concluded that claimant was not disabled as of his date last insured.

> Born February 8, 1945, the claimant was 47 years old on the date his insured status expired. For the purposes of this decision, he was a "younger individual age 45-49" within the meaning of the regulations. . . . Mr. Robidas has an eighth grade education, defined as "limited." The claimant has a skilled work background. There is no evidence that he has acquired any transferable work skills.
>
> I have concluded that there are jobs, existing in significant numbers in the national economy, which the claimant was able to perform on the date his insured status expired. Because Mr. Robidas was capable of performing sedentary work on the date his insured

---

2    "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted). See also 20 C.F.R. § 404.1545.

status expired, a finding of "not disabled" is reached
by direct application of Medical-Vocational Rules
201.19 and 201.25.

Administrative transcript at 38.


II.   Does Claimant's Impairment Meet a Listed Impairment?

At step three of the sequential analysis, the ALJ must

determine whether a claimant's impairment meets or equals an

impairment list in appendix 1 of the Regulations.

> If [the claimant has] an impairment(s) which meets the
> duration requirement and is listed in appendix 1 or is
> equal to a listed impairment(s), [the Commissioner]
> will find [the claimant] disabled without considering
> [his or her] age, education, and work experience.

20 C.F.R. § 404.1520(d).   In this case, the ALJ concluded that

claimant's degenerative disc disease, although severe, did not

meet or equal any impairment listed in appendix 1.

Administrative transcript at 32.   Claimant challenges that

conclusion, saying that it is not supported by substantial

evidence.   In support of that assertion, claimant has not pointed

to any specific portions of the record, nor has he directed the

court to any pertinent case law or Social Security Rulings or

Regulations.   His argument on that front is, in its entirety, as

follows:

> When a Social Security claimant proves through the
> medical testimony that [he] meet[s] or equal[s] a
> listing level, then a finding of disability is entered
> and benefits awarded.   The ALJ in the instant case
> seems to overlook the MRI findings because the MRI was
> not performed within the insured period.   Objective

> medical evidence of a disabling condition should be
> given appropriate weight even if that testing occurs
> outside of the insured dates. Mr. Robidas has not
> sustained any other injuries which would have caused
> the MRI findings. He has consistent non-remitting pain
> since the work-related injury. The ALJ has erred in
> not giving appropriate weight to these findings.

Claimant's motion to reverse (document no. 5) at 2. The court disagrees.

Notwithstanding claimant's assertion to the contrary, the ALJ did not "overlook" the results of Mr. Robidas's MRI, which was performed in December of 1996, four years after his date last insured. Instead, the ALJ specifically acknowledged those results and then gave a detailed explanation as to why he determined they did not support a finding that claimant was, on or before December 31, 1992, disabled. See Administrative transcript at 35-37 (discussing, among other things, why the ALJ discounted claimant's subjective complaints of pain and the inconsistency in claimant's testimony regarding his ability to sit for periods of up to two hours; discussing the basis for having rejected counsel's argument that claimant had "impinging structural defects" prior to his date last insured; and pointing to substantial medical evidence supporting his conclusions).

Claimant's impairment is degenerative and can reasonably be expected to become more debilitating over time. Consequently, his current condition (and the results of his relatively recent

10

MRI) do not necessarily reflect his condition as of his date last insured.  The ALJ specifically acknowledged that point, noting:

> In reaching the above determination [concerning claimant's RFC], I find the claimant's statements concerning his impairment and its impact on his ability to work are not entirely credible in light of the findings made on examination, the medical history and the reports of the treating and examining practitioners.  While I do not question the claimant's credibility with respect to his present medical status, my evaluation of the claimant's subjective allegations is based upon the claimant's medical status at his date last insured, December 31, 1992.  Thus, while the claimant's level of impairment at the present time may well be corroborated by the objective medical evidence, I am nonetheless obliged to find his subjective complaints less than credible at the time of his date last insured in light of the factors outlined in Social Security Ruling 96-7p.

Administrative transcript at 36.

Claimant asserts that, on or before his date last insured, his "bulging disc with impingement qualifi[ed] him to meet medical listing 1.05 of the Social Security criteria." Claimant's motion to reverse (document no. 5) at 2.  That portion of the Social Security regulations lists a number of impairments which, independent of a claimant's age, education, and vocational skills, dictate a finding of disability.  The specific provision referenced by claimant applies to:

> C.  Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months.  With both 1 and 2:

11

>    1.    Pain, muscle spasm, and significant
>          limitation of motion in the spine; and
>
>    2.    Appropriate radicular distribution
>          of significant motor loss with
>          muscle weakness and sensory reflex
>          loss.

20 C.F.R. Part 404, Subpart P, § 1.05(C). Having carefully reviewed the administrative record, the ALJ's written decision, and claimant's arguments, the court concludes that the ALJ's determination at step three of the sequential analysis – that claimant's impairment did not meet or equal a listed impairment – is supported by substantial evidence. Among other things, the ALJ pointed to the opinions of several treating and examining physicians who opined that claimant had a work capacity for at least sedentary work. Administrative transcript at 33-35. Additionally, the ALJ specifically concluded that claimant did not, during the relevant period of inquiry, suffer motor or sensory loss.

>    While the claimant does report having had radicular
>    pain and numbness, the medical records simply [do] not
>    support the existence of an impinging structural defect
>    prior to the claimant's date last insured in December
>    1992 (Exhibits 1F, 3F, 4F and 5F). To the contrary,
>    physical examination repeatedly showed normal gait and
>    motor functioning, with no significant muscle atrophy
>    and no reduction in DTRs. Clinical examinations did
>    confirm the presence of some decreased sensation in the
>    right lateral thigh and muscle spasm with limited range
>    of lumbosacral motion. Yet, Drs. Kilgus, Taylor and
>    Publow all felt that claimant had a work capacity for
>    at least sedentary work (Exhibits 1F, 3F, and 4F). In
>    fact, the physical capacities evaluation referred to by
>    Attorney Roundy [counsel to claimant], establishes a
>    "light duty capacity" including lifting up to 20 pounds
>    with prolonged sitting (Exhibit 5F).

Administrative transcript at 36-37. Affording appropriate deference to the ALJ's factual findings, which are supported by substantial evidence in the record, the court concludes that he did not err at step 3 of the sequential evaluation process when he determined that claimant had no impairment which met or equaled a listed impairment.

III. The ALJ's Failure to Call a Vocational Expert.

Claimant also asserts that the ALJ erred when, after determining that claimant could not stand or walk for prolonged periods of time, he failed to call upon the expertise of a vocational expert to determine whether there remained jobs (in sufficient numbers) in the national economy which claimant could perform. Again, however, he has pointed to no precedent, regulations, or Social Security Rulings which support his position.

Claimant suffers from no nonexertional limitations which would erode the otherwise applicable occupational base. With regard to exertional limitations, the ALJ concluded, among other things, that claimant "lacked the residual functional capacity to . . . stand or walk for prolonged periods." Administrative transcript at 39. The record amply supports that conclusion (and claimant does not disagree). However, the record also supports the conclusion that, notwithstanding his inability to stand or walk for "prolonged periods," claimant was capable of standing

13

and/or walking for periods of at least 30 minutes at a time, and probably longer. Compare Physical Functional Capacity Assessment prepared by Alan Campbell, M.D., Administrative transcript at 112 (concluding that there was no limit on the amount of time claimant could stand during an eight hour day), with Physical Capacity Evaluation completed by Irene Cote, P.T., Administrative transcript at 142 (noting that claimant estimated that he could stand for 20 minutes at a time, and observing that he stood for 30 minutes during his testing).

The pertinent Social Security Rulings provide that, to be capable of performing the full range of sedentary work, an individual must be capable of standing and walking for a total of approximately two hours during the course of an eight-hour workday.

> Standing and walking: The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded.

Social Security Ruling 96-9p, Policy Interpreting Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185 at *5 (July 2, 1996). Here, there is substantial evidence in the record to support the ALJ's implicit conclusion that, while claimant could

14

not "stand or walk for prolonged periods," he could stand and walk for approximately two hours during an eight-hour workday.

Consequently, the ALJ was entirely justified in relying exclusively upon the Grid in determining that claimant's impairment did not, on or before his date last insured, cause him to be disabled. See, e.g., Heckler v. Campbell, 461 U.S. 458 (1983). See also Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991) ("Where a claimant's impairments involve only limitations in meeting the strength requirements of work [i.e., exertional limitations], the Grid provides a 'streamlined' method by which the [Commissioner] can carry this burden.").[3]

## Conclusion

For the foregoing reasons, the court concludes that there is substantial evidence in the record to support the ALJ's determination that: (a) claimant's impairment, though severe on his date last insured, did not meet or equal a listed impairment;

---

3    The ALJ specifically concluded, and claimant does not contest, that claimant does not suffer from any nonexertional limitations. His inability to stand and walk for prolonged periods is an exertional (or strength-related) limitation. See SSR 96-6p, 1996 WL 374185 at *5 ("Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.") (emphasis supplied). In cases such as this, exclusive reliance upon the Grid becomes questionable only if the claimant suffers from nonexertional limitations which erode the otherwise applicable occupational base suggested by the Grid. See generally, Ortiz v. Secretary of Health & Human Srvcs., 890 F.2d 520 (1st Cir. 1989).

and (2) claimant was not, on or before his date last insured, disabled within the meaning of the Act. Accordingly, claimant's motion to reverse the decision of the Commissioner (document no. 5) is denied and the Commissioner's motion to affirm (document no. 7) is granted.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

January 12, 1999

cc: Vicki S. Roundy, Esq.
    David L. Broderick, Esq.